FARMERS' LUMBER CO. v. LUIKART*
LUIKART v. FARMERS' LUMBER CO.
(Nos. 1325, 1388; May 24, 1927; 256 P. 84.)

APPEAL AND ERROR — CORPORATIONS — STOCK SUBSCRIPTIONS — MIS-REPRESENTATION AS TO STOCK—CONDITIONAL SUBSCRIPTION—REVO-CATION OF SUBSCRIPTION—NONPAYMENT DOES NOT AFFECT BONA FIDES OF SUBSCRIPTION—ORAL SUBSCRIPTIONS—NEW TRIAL—IN-TEREST.

1. In action to recover unpaid balance of stock subscription of capital stock of plaintiff corporation, finding of trial court on conflicting evidence that defendant did not rescind subscription because of claimed fraudulent mis-representations should not be disturbed.

2. Where at time defendant signed stock subscription organization meeting of the corporation had not been held, nor officers selected, and therefore no contracts of employment could have been made, statements of promoters as to conduct of affairs of corporation and its management by a named person were promissory only in character and did not authorize subscriber to rescind.

3. Where defendant alleged that subscription to capital stock was obtained by fraudulent misrepresentations that the company would be managed by manager of another company, and that a named person would become the buyer, since before signing subscription he made no investigation as to matters represented, although means thereof were readily accessible, and was not prevented from making investigation, he cannot thereafter complain.

4. A conditional subscription to capital stock is in the nature of a continuing offer which may be withdrawn before acceptance, but after acceptance in any manner by the corporation the subscriber is bound until the corporation has performed the condition, or for a reasonable time.

5. Where subscriber to capital stock voluntarily paid 10 per cent. of his subscription on condition that full amount of capital stock would be sold, where no time was fixed within which the stock was to be disposed of, subscription could not be avoided by subscriber until corporation had reasonable time to complete performance of condition.

6. Where defendant subscribed to capital stock of corporation on condition that entire capital would be sold, that some subscribers were unable to go on with their agreements on account of death and subsequent inability to meet balance due therefor *held* not to affect bona fides of their subscriptions.

7. An oral subscription to capital stock of a corporation may be valid.

8. Where defendant subscribed for capital stock of corporation being organized on condition that all capital stock would be sold, final call for balance due on stock subscriptions *held* to have been made before unreasonable time elapsed for performance of condition; "sold" in subscription agreement obviously meaning contracted for and not necessarily meaning completely paid for.

9. Overruling motion for new trial where newly discovered testimony would impeach statements of witness, but which, in view of record, would not have affected the result, was proper.

10.  Where subscriber to capital stock of corporation was not
     liable for balance due on his subscription until all of
     capital stock had been in good faith subscribed, interest
     was allowable only from the date of the last call for
     unpaid subscriptions.

*See Headnotes:   (1) 4 CJ p. 883 n. 33.   (2) 14 CJ p. 609 n.
13. (3) 14 CJ p. 612 n. 49.   (4) 14 CJ p. 564 n. 78, 79.   (5) 14 CJ
p. 617 n. 8.   (6) 14 CJ p. 511 n. 69 New.   (7) 14 CJ p. 519 n. 42.
(8) 14 CJ p. 636 n. 85 New; 36 Cyc. p. 508 n. 14 (9) 29 Cyc. p.
903 n. 60; p. 918 n. 5.   (10) 14 CJ p. 645 n. 68.

APPEAL from and ERROR to District Court, Fremont Coun-
ty; JAMES H. BURGESS, Judge.

Action by the Farmers' Lumber Company against E. H.
Luikart.  Judgment for plaintiff, and defendant appeals
and brings error.  Cases disposed of together on appeal.

*A. C. Allen* and *O. N. Gibson,* for appellant, and plaintiff
in error.

The filing of a counterclaim for equitable relief con-
verted the action into a suit in equity; Sutherland Code,
Pl. & Pr. Sec. 1157; 35 C. J. 174; Oil Co. v. Bank, 260
U. S. 235; Taylor v. Brick Co., 66 O. S. 360, 64 N. E. 428.
Proof of sale of all of the stock was a condition precedent
to recovery upon any stock subscription; 4723 C. S. 35
Cyc. 1347; 1 Cook on Corp. (6 Ed.) Sec. 83, p. 316; Ed-
wards v. Johnson, 23 Wyo. 384; 2 Fletcher 1562.  Every
subscription is upon implied condition that no liability oc-
curs until all stock is subscribed for; 14 C. J. 538; 2
Fletcher 1562; 1 Cook on Corp. (6th Ed.) Sec. 176.  Only
bona fide subscriptions are considered; 11 Fletcher 1371;
Bank v. Cook, 25 Iowa 111; Lumber Co. v. Clark, (Ore.)
203 P. 588.  Ordinarily a corporation may not subscribe
for shares in another company; 2 Fletcher 1199; People
v. Trust Co., 130 Ill. 277; De La Vergne v. Institute, 175
U. S. 58.  An ultra vires subscription cannot be counted;
14 C. J. 543; Harvester Co. v. Jefferson, (Minn.) 74 N. W.
149; Berry v. Yates, 24 Barb. (N. Y.) 199; Hotel Co. v. Gil-
more, (Wash.) 32 P. 1004; Belfast Ry. Co. v. Cottrell, 68

Me. 185. Withdrawn or cancelled subscriptions cannot be counted; 2 Fletcher 1577; Ry. Co. v. Sullivan, 57 Ga. 240; Mc Cully v. Pittsburg Ry. Co., 32 Pa. 25. Directors have no power to consent to withdrawal, release or cancellation of subscriptions, except under certain conditions; 14 C. J. 621. Consent of the stockholders is usually required; 14 C. J. 623; 2 Fletch. 1433. Several of the alleged subscriptions were not such as to entitle them to be counted in determining appellant's liability; 14 C. J. 542; 2 Fletch 1376, 1578. Where particular acts are ordinarily beyond the power of a corporation, no presumption is indulged in favor of their validity; Frye v. Bank, 10 Ill. 332. Where a statute prohibits an act, but makes exceptions, a party desiring to avoid the statute must show himself within the exception; Mear v. Hutchinson, 134 Fed. 266; Schlemner v. Ry. Co., 205 U. S. 1; 37 C. J. 1244. Amendments to pleadings, to conform to the evidence, are permissible; 31 Cyc. 371; Ry. Co. v. Goss, (Ark.) 123 S. W. 390; Crook v. Ry. Co., (Ky.) 209 S. W. 859; Doyle v. Miles, (Colo.) 219 P. 1068. The withdrawal of other subscriptions precluded recovery; 2 Fletcher 1427; Fruit Co. v. Cool, (Cal.) 40 P. 542. Withdrawals may ratify a release; Brick Co. v. Winson, (Cal.) 151 P. 425; 14 C. J. 623.

*Brome & Brome,* for respondent.

The construction placed upon the contract, by the signers, should prevail and appellant should not be permitted to avoid his obligation, for the reason that he or any other subscriber refused to comply with their agreement; Edwards v. Johnson, 23 Wyo. 390. Subscription books are evidence to show who are subscribers; 2 Fletcher 1243; Shich v. Co., 44 N. E. 49. Every requirement of the subscription contract was complied with; proof of an oral subscription is binding; Rutenbeck v. Hohn, 121 N. W. 700; Mc Coy v. Exposition, 57 N. E. 1043; 14 C. J. 544.

*A. C. Allen* and *O. N. Gibson,* for plaintiff in error.

There appearing to be some question as to whether the action of the trial court, in overruling the motions for new trial on the grounds of newly discovered evidence, can be considered on appeal under Chapter 392, where such motion was filed subsequent to the notice of appeal, proceedings in error were taken without waiving any of the rights of plaintiff in error upon the pending appeal or assignments of error therein; we are not aware that this question of practice has ever been considered by this court; in State v. Grandbouche, 32 Wyo. 88, there was no bill of exceptions; in case of doubt, it is proper to seek review by both methods; 3 C. J. 343, 352, and 346. Points and authorities, in our brief on appeal, are referred to and adopted.

Before POTTER, Justice, BROWN and RINER, District Judges.

RINER, District Judge.

These two cases, the one under the direct appeal statute, and the other a proceeding in error, are before this Court to obtain review of a judgment of the District Court of Fremont County rendered against one E. H. Luikart, hereinafter referred to as the defendant. Both cases, therefore, can and will be disposed of together.

The action wherein this judgment was had was brought by the Farmers Lumber Company, a corporation organized under the laws of Wyoming, hereinafter mentioned as the plaintiff, to recover from the defendant the unpaid balance of his subscription for five thousand dollars of the capital stock of the plaintiff corporation. The defenses interposed were substantially that the subscription had been obtained by fraudulent representations and that the full amount of the capital stock of the plaintiff had not been sold. Defendant's answer also contained a counter-claim seeking to recover a five hundred dollar

initial payment on his subscription, which was alleged
to have been paid by his agent without authority. Upon
the conclusion of the trial the court found for the plain-
tiff and rendered a judgment in its favor for $6067.38, as
claimed.

In the course of the trial below the defendant, though
at first denying that such authority existed, after being
shown a letter written by him to his agent, directing the
latter to make the five hundred dollar payment on his
stock subscription, admitted that he had authorized such
payment to be made. In the argument before this Court
it was conceded by defendant's counsel that he could not
recover on his counter-claim for this amount, and consid-
eration of that matter may be laid aside.

On direct examination, testifying concerning the al-
leged representations made to him at the time he signed
the stock subscription list, and which he claimed induced
him to make his subscription, defendant said:

"Mr. Keating told me they were organizing a lumber
company, fifty thousand dollars capital stock, and that
company would be managed by one S. L. Cleaves, who was
then manager of the Diamond Lumber Company at River-
ton,—Cleaves had been engaged to run this company,—
and that Keith of Casper would be buyer and teach
them the business, that is, Keith and Mr. Rohlff, Oscar
Rohlff."

And on cross-examination he testified:

"The only mention that was made was that Mr. Cleaves
would run the company there at Riverton, and Mr. Keith
would be the active buyer and be sort of adviser of the
business, I think it was also discussed that Mr. Keating
would be president and that Mr. Rohlff would go in as
secretary."

On rebuttal, Mr. Keating, after denying that the de-
fendant had correctly stated matters with respect to rep-

resentations by Keating to defendant as to the organization of the Lumber company, testified:

"Q.   You may tell the Court as you recall them just how the transaction came up that gave rise to the organization of this company.

A.   Why, I wasn't doing anything and he was very anxious to get into some line of business, so he proposed this lumber company, and then he asked Mr. Rohlff and I to go down and see Earl Warren, which we did, and from that time the organization of the lumber company started.   Mr. Warren said he had a piece of property to start lumber company and we came back and I asked Mr. Luikart to draw up subscription list and we signed this up in the back room of the bank.

Q.   Did you make any representations?

A.   So far as I was concerned I never solicited stock. I didn't know any one there, I did not know Mr. Nicholson at that time.

Q.   Did you solicit Mr. Luikart?

A.   No, sir, no one, except Mr. Kopp afterwards.

Q.   Did you make any representations to Mr. Luikart about Mr. Cleaves?

A.   Yes, I told him I thought we could get Cleaves to be manager; in fact I went right over to see him."

This witness also testified:

"Q.   Mr. Keating, did you ever make representations to Mr. Luikart with regard to this organization that was untrue?

A.   No, sir, I had nothing to do with the Keith Lumber Company, in fact had nothing to do with the subscription list, Delfelder got Nicholson, and Warren got Madden of the James Graham ranch and Mr. Fuller and Mr. Arnold and Mr. Deardorff and Dr. Tonkin."

It appears from the record that neither Cleaves nor Keith were employed by the company, although there is testimony that the former helped at first in the purchase of lumber for the company.

It is insisted by the defendant that he could and did rescind his subscription agreement on account of these claimed fraudulent representations. From the testimony above quoted it is apparent that there was a conflict of the evidence to some considerable degree, and in that view of the matter the finding of the trial court should not be disturbed. Hester v. Smith, 5 Wyo. 291, at 295, 40 P. 310.

It also appears from the record that at the time defendant signed the stock subscription the organization meeting of the plaintiff had not been held, no officers had been selected, and of necessity no contracts of employment had or could have been made. A fair analysis of the already quoted testimony of defendant and Keating alike discloses that the statements made by the latter to the former when the subscription was signed dealt with the future conduct of the company's affairs, that is to say, they were promissory only in their character.

In Wickwire v. Warner, 174 N. Y. Supp. 811, it appeared that the representations made to secure the stock subscription were,

"that the company needed a large amount of additional capital and that he (the agent securing the subscription) had a promise from certain Pittsburgh capitalists to put four hundred thousand dollars additional capital into the company,"

and the court said:

"The plaintiff claims that he has established fraud of such a character that a court of equity should decree the rescission of the contract. The claim of fraud is based upon representations which are not alleged or proved to have been false, and others of a promissory character. Events since the time have not shown a fulfillment of the promises made. The representations are not sufficient to justify a rescission of the contract for fraud."

In McCoy v. Bankers Trust Co., 200 S. W. (Tex.) 1138, the representations made to secure the stock subscription were that the company would "open a branch" in the city of San Antonio "for the purpose of handling loans and collateral in southwest Texas," in which section the defendant resided, and "that in the matter of placing loans and handling collateral such stockholders would be given preference." These statements were untrue. The trial court struck out a special answer setting out these matters and, in affirming that action, the appellate court said:

"A statement which is promissory in its nature, or an assurance of what will thereafter be done, is not a representation, but rather in the nature of a contract, and is not the basis of an action for deceit. So that representations having reference to the future merely, however much relied on, do not constitute a cause of action or ground of defense. It is said that a person to whom such statements are made had no right to rely on them. Smith on the Law of Fraud, Sec. 7. The allegations in appellant's answer to the effect that appellee's agent stated to him that appellee would establish a branch office at San Antonio for the purpose of handling loans and collateral in southwest Texas, and which were at the instance of appellee, stricken out, do not show the representation of an existing fact, but rather a representation promissory in its nature and having reference to the future merely. This being true, the failure on the part of appellee to comply with such promise constituted no defense to this action, and appellee's exceptions to the allegations in appellant's answer setting up such matter were correctly sustained."

See also Citizens State Bank of Roundup v. Snelling, 55 Mont. 476, 178 Pac 744.

And in First National Bank v. Swan, 3 Wyo. 356, 23 P. 743, this court declared that:

"A representation which is promissory in its nature, which relates to the future, or which depends upon contingencies which may or may not happen, furnishes no foundation for a claim of fraud or deceit."

This language was again quoted with approval in Bushnell v. Elkins, 245 Pac. (Wyo.) 304 at 307.

Under the rule thus announced we think there were no misrepresentations which would relieve defendant from carrying out his stock subscription contract.

Again, the record shows that the defendant was the president of a bank at the time he signed the subscription; that he wrote the subscription agreement himself; and that before he signed it he made no investigation of the matters concerning which misrepresentation is claimed to have been made, although Cleaves and Keith lived, the former in defendant's own town Riverton, and the latter in Casper, readily accessible.

In Andrus v. St. Louis Smelting etc. Co., 130 U. S. 643, 9 S. Ct. 645; 32 L. Ed. 1054, Mr. Justice Field said that:

"The law does not afford relief to one who suffers by not using the ordinary means of information whether his neglect be attributable to indifference or credulity."

And in First National Bank v. Swan, supra, this court has referred to the rule thus:

"A party about to consummate a contract by which he parts from property cannot, when the opportunity is before him, and there is nothing in the situation of the parties to prevent investigation, decline to prosecute a reasonably diligent inquiry, refuse to exercise his own judgment, and then be heard to complain of an imposition or fraud practiced on him."

It does not appear that defendant was prevented in any way from making investigations which would have easily disclosed the true situation. He failed to make them and cannot thereafter well complain.

The contention is made that the entire capital stock of the plaintiff was not sold, as required by the terms of the subscription agreement. In other words, it is urged that the subscription was conditional and that the condition

had not been performed. Assuming the subscription to be conditional the rule governing such agreements is well stated in the case of Natwick v. Terwilliger, 24 Wyo. 253, 157 P. 696, 160 P. 338, where this court, speaking through Mr. Chief Justice Potter, quoted with approval the following language from Thompson on Corporations, (2nd ed.):

"The rule as gathered from the effect, rather than the direct holdings of the cases, seems to be that the conditional subscription is in the nature of a continuing offer which may be withdrawn before acceptance; but after acceptance in any manner by the corporation the subscriber is bound until the corporation has performed the condition, or for a reasonable time; or, in other words, he must wait a reasonable time for such performance by the corporation. After acceptance and before performance, or a reasonable time for performance, he cannot withdraw or otherwise revoke such conditional subscription."

It appears from the record that the defendant paid voluntarily ten per cent of his subscription, which was received by the plaintiff. Thereby, undoubtedly, the latter accepted the subscription and undertook to perform the condition. As no time was fixed in the subscription agreement within which the stock was to be all disposed of, it would seem that the subscription could not be avoided by defendant until plaintiff had had a reasonable time to complete performance of said condition.

There is testimony in the record that all of the stock of the plaintiff had been in good faith subscribed by February, 1920, by parties, nearly all of whom ultimately paid for their stock in full. No subscriptions appear to have been taken which were merely colorable or fraudulent. It is said that a bona fide subscription is one made by a person who subscribes in good faith with a reasonable expectation and apparent prospect of being able to pay the same when called for. 2 Fletcher Cyc. of Corporations, 1376. None of the subscriptions taken seem to vio-

late this rule. Some of the signers were not able to go on with their agreements on account of death and subsequent inability of their estates to meet the balance due. This does not affect the bona fides of the subscriptions. In Penobscot etc. Co. v. Dummer, 40 Me. 172, 63 Am. Dec. 654, it was said in response to the contention that some of the subscription signers were irresponsible, that:

"It is upon the apparent condition of men and things that business must be transacted by corporations as well as by individuals, while success may depend much upon the care exercised to ascertain their true condition. The "testimony does not show that the company did not act in good faith in receiving those subscriptions, or that it had not at that time reason to conclude that payment would be made for those shares, although the death of Seymour and the insolvency of his estate may lead to the conclusion that he was not at that time a responsible person for that amount."

And the same court again remarked, on the same subject, in a later case, Penobscot etc. Co. v. White, 41 Me. 512, 66 Am. Dec. 257:

"But if   *   *   *   the list appeared to the company to consist of names which might be relied on for the fulfillment of the subscription, they would be justified in proceeding to organize, and their proceedings would be valid, even though it might subsequently be made to appear that some of the subscribers at the time were not of sufficient pecuniary responsibility to pay for their stock, and were not reputed to be so, provided the corporation acted in good faith on their part in the acceptance of such list."

In Heiskell v. Morris, 135 Tenn. 238, 186 S. W. 99, suit on a stock subscription agreement was resisted on the ground that the capital stock of the corporation never was fully subscribed, it being charged that certain other subscribers were insolvent. And the court said:

"There is no showing made by defendants that Parham and Weil were not solvent at this time, and not apparently able to take care of the subscription. Insolvent subscriptions to corporate stock cannot be counted, so as to hold other subscribers. The test, however, is the apparent solvency of the subscriber at the time the subscription was made by him. If the subscriber was apparently solvent, there is no fraud on other subscribers occasioned by the acceptance of the subscription in good faith, although afterwards he may prove insolvent."

After citing authorities and referring to the fact that there were decisions holding that the decision of the incorporators that the necessary amount of stock had been subscribed, and that the subscribers are responsible, is conclusive on these questions in the absence of fraud, the court further says:

"We need not, however, determine whether the acceptance of the subscription of Parham and Weil, trustees, by the incorporators, was conclusive of their apparent solvency or not. If this question is open for review by the court, the solvency of such subscription is a matter of defense, and there is no proof whatever offered to sustain this defense. There is nothing to indicate that Parham and Weil were not actually solvent, as well as apparently solvent, "at the time of the organization of this corporation."

Other subscribers appear to have orally agreed to increase their subscriptions and to have actually done so to replace a few who could not go on with their agreements. It has been held that an oral subscription to stock may be valid.

See Rutenbeck v. Hohn, 143 Ia. 13, 121 N. W. 698, 136 Am. St. Rep. 731.

As the final call for balance due on stock subscriptions to plaintiff's stock was not made until March 1st, 1920, we cannot say that an unreasonable length of time had elapsed in the performance of the condition that all of

the stock should be sold and that the trial court was in that respect in error. The word "sold" in the subscription agreement in our opinion obviously meant, as it frequently does, "contracted for," and not necessarily completely paid for.

See Hathaway v. Barr, 21 Me. 567, 38 Am. Dec. 278.

It is insisted that the court erred in overruling the motion for a new trial, it appearing that testimony tending to impeach the statements of the witness Keith as to the subscription of the Keith Lumber Company would be available. In our view of the record this testimony, if it had been at hand at the trial which was had in this case, would have not affected the result. Others had within a reasonable time agreed in good faith to take up the stock subscription of the Keith Lumber Company. The record shows they ultimately paid for it.

Inasmuch, however, as the defendant was not liable for the balance due on his subscription until all of the plaintiff's stock had been bona fide subscribed, we do not think that interest should have been allowed on the amount due until March 1st, 1920, the date of the last call. The judgment accordingly should have been for the sum of $6045.24 and costs as taxed. The judgment as thus modified will be affirmed.

*Modified and Affirmed.*

POTTER, Justice, and BROWN, District Judge, concur.