IN THE MATTER OF THE ADOPTION OF RONALD EUGENE HIATT, Minor.

CLYDE RAYMOND HIATT, JR., and DOROTHY ELEANOR HIATT, Husband and Wife,
*Plaintiffs and Appellants,*

vs.

CHARLEY LA FEVER and ANNA LA FEVER, Husband and Wife,
*Defendants and Respondents.*

(No. 2505; March 25th, 1952; 242 Pac. (2d) 214)

374

376

For the plaintiffs and appellants the cause was submitted upon the brief of Raper and Raper, of Sheridan, Wyoming, and also oral argument of Mr. John F. Raper, Jr.

For the defendants and respondents the cause was submitted upon the brief of R. G. Diefenderfer and E. E. Birchby, both of Sheridan, Wyoming, and also oral argument of Mr. Diefenderfer.

## OPINION

ILSLEY, Justice.

This is an appeal from a judgment and decree denying a petition to vacate and set aside an order of adoption.

Ronald Eugene Hiatt is the adopted child. The plaintiffs and appellants are Clyde Raymond Hiatt, Jr., and Dorothy Eleanor Hiatt, who are also the adopted child's natural parents. The defendants and respondents are Charley La Fever and Ann La Fever, who are also the uncle by marriage and the natural aunt of Clyde Raymond Hiatt, Jr.

Ronald was born September 16, 1944 and the La Fevers helped raise him since he was sixteen months old. Clyde and Dorothy Hiatt had marital difficulties and during May, 1949 they were divorced. On the 29th of August, 1949, La Fevers, the defendants and respondents, petitioned the District Court of Sheridan County, Wyoming, for the adoption of Ronald Eugene Hiatt who was then about five (5) years of age. An order of adoption was made and entered decreeing that Ronald be adopted by the La Fevers and that his name be changed to Ronald Eugene Hiatt La Fever. Thereafter in November, 1949 the Hiatts remarried.

It is stated in the petition to vacate and set aside the order of adoption: "That in the adoption proceedings it was alleged in the petition for adoption and recited in the Consents signed by the natural father and mother of Ronald, the Hiatts, that Ronald had lived and resided with the defendants for a period of six months prior to the filing of the said petition of adoption." This was admitted by the Answer of the La Fevers. The petition of plaintiffs then alleges that the child lived and resided with the defendants for a period of only three months and that because of the lack of six (6) months' residence as provided in § 58 209 W.C.S. 1945, the order of adoption was unlawful and the adoption proceedings were erroneous.

Paragraph four (4) of the petition was stricken by the trial court upon motion of the defendants, which paragraph reads as follows:

"That at the time the said adoption proceedings were had, the Defendants herein promised to these Plaintiffs that if they ever wanted the custody of their said youngster returned that they, the Defendants, would restore the said Ronald Eugene Hiatt to his natural parents, the Plaintiffs herein, and that they, the said Defendants, would release any and all claim that they might have by reason of such adoption proceedings; that relying upon said representations of the Defendants, the Plaintiffs

signed the said 'Consents'; that the Plaintiffs herein were young, inexperienced and did not realize or understand the extent and nature of their acts of signing said 'Consents'."

Counsel for appellants contend, "This in effect constitutes a fraudulent gaining of the consent of the natural parents and is a fraud upon the court and is ground for annulling the order of adoption."

The petition then recites that plaintiffs are in a position to provide a home for Ronald; that it would be for the best interests and welfare for the child to be returned to plaintiffs and that they are entitled to the sole and exclusive custody of the child.

The Answer, after making the admissions referred to above, stated that it was alleged: "In the petition for adoption of said child, in the Consents of the plaintiffs herein and in the order of adoption that said child had lived and resided with these defendants for a period of six (6) months prior to the filings of the petition of adoption." Defendants denied all other allegations in the petition of plaintiffs.

Counsel for appellants earnestly urge that the striking of nearly all of paragraph four (4) of their petition is clearly error as set forth in the first specification of error; and that it was error for the trial court to refuse to permit the introduction of evidence in that regard although an offer to do so on behalf of appellants was timely made.

Counsel seem to be under a misapprehension as to what constitutes fraud; what is necessary to allege in a petition charging fraud; and what proof is necessary to show fraud. First of all the fraud must relate to a past or existing fact. In other words, the representation to constitute fraud must not ordinarily relate to the future. The rule is stated in 23 Am. Jur. 794 § 35 thus:

"The general rule, which is supported by numerous decisions in almost all American and British jurisdictions,

is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on representations or statements which involve mere matters of futurity or things to be done or performed in the future. Hence, statements or representations as to future or contingent events, as to expectations and probabilities or as to what will be or is intended to be done in the future * * * do not constitute fraud * * *:"

See also 37 C.J.S. 222 et seq; Bushnell vs. Elkins 34 Wyo. 495-506, 245 P. 304, 51 A.L.R. 13; First Nat. Bank vs. Swan 3 Wyo. 356-373, 23 P. 743—where this court stated:

"A representation which is promissory in its nature, which relates to the future, or which depends upon contingencies which may or may not happen, furnishes no foundation for a claim on fraud or deceit."

To the same effect is the comment made by this court in Farmers' Lumber Co. vs. Luikart 36 Wyo. 413-420, 256 P. 84. So even though statements were made as set forth in the paragraph stricken, they were promises relating to the future depending upon contingencies which may or may not happen and furnish no foundation for a claim of fraud.

If the petition was to have been founded upon fraud, the appellants should allege with certainty and definiteness, tangible facts to sustain the general averments of fraud, as fraud must be alleged with particularity. Smith vs. Stone 21 Wyo. 62, 128 P. 612. Goldberg vs. Miller 54 Wyo. 485, 93 P. (2d) 947, 37 C.J.S. 370 § 78, 24 Am. Jur. 72 § 244. This was not done. Because of the insistence by counsel for the appellants that a fraud was prepetrated upon the court by reason of what is alleged to be a lack of six months' residence by Ronald in the home of the respondents at the time of the signing of the order of adoption, we will here briefly relate that which we consider necessary to prove fraud. The books say: Fraud should be proved by evidence that is clear and convincing so as not to prejudice the usual presumption in favor of honesty, good intention and a per-

son's good character. Courts have expressed the principle in various ways such as: clear and positive; clear and satisfactory; clear, cogent and convincing; to a reasonable certainty; and so on. 37 C.J.S. 426 et seq.

This court has taken the occasion to say: "A man who alleges fraud must clearly and distinctly prove the fraud he alleges, and proof must be clear and sufficient to satisfy the mind and conscience of the existence of fraud." Kahn vs. Traders Ins. Co. 4 Wyo. 419. Again in 1st Nat. Bank vs. Barrett 54 Wyo. 394-402, 93 P. (2d) 510: "Fraud must be established by clear and convincing evidence." Another way of stating the principle is set forth in Patterson vs. Lee-Clarke-Andreesen Co. 7 Wyo. 401-415, where it is said: "The law will not impute fraud to any party when the facts and circumstances out of which it is supposed to arise may well consist with honesty and purity of intention." See also Williams vs. Yocum 37 Wyo. 432-443, 263 P. 607; Carlson et ux vs. MacCormick et ux 190 N.W. 108 (Wis.); Parsons vs. Parsons 77 N.W. 147; Gale vs. Lee et al 18 N.W. (2d) 147 (Minn.); Wells vs. Stanger et al 123 Mont. 26, 207 P. (2d) 549.

We find no error in striking Paragraph four (4) of the petition.

In the second specification of error it is asserted that the order denying the petition to vacate the order of adoption is contrary to law. Let us look at the record with respect to the original proceedings for the adoption of Ronald Eugene Hiatt. These proceedings were before the Honorable James H. Burgess, an able, distinguished and experienced District Judge of many years' standing. He had before him the petition for adoption and the written Consents, all of which recited that the child had lived and resided at the home of the La Fevers for more than six months before the order of adoption. More than that, the child Ronald, his natural parents who had been divorced, Clyde and Dorothy Hiatt, as

well as the prospective parents, Charley and Anna La Fever, were all present in court. The order of adoption recites, among other things: "The court having heard the evidence herein and being fully advised in the premises, states that Ronald Eugene Hiatt, now Five (5) years of age this coming September 15th, 1949, is the minor son of Clyde Raymond Hiatt, Jr., and Dorothy Eleanor Hiatt; that during May, 1949, the said mentioned father and mother of this said minor boy were divorced and the absolute care, custody and control of said Ronald Eugene Hiatt was given to his father, Clyde Raymond Hiatt, Jr.; that both the father and mother of said minor child have duly filed their consent to these Petitioners herein adopting said minor child.

That after due investigation this Court is satisfied that Mr. and Mrs. Charlie La Fever have had the absolute care, custody, support and control of said minor child for longer than a period of Six (6) months immediately preceding the date of filing their Petition herein; that they have raised and taken care of said child the same as if he was their own natural born son; that it is for the best interests of this said minor child he be adopted as the child of the Petitioners herein whom this Court has found to be suitable and proper persons to adopt him and that the name of said child should be changed from Ronald Eugene Hiatt to Ronald Eugene La Fever."

Following this statement the order of adoption is set out. Counsel for appellants contend that in this order there is no finding that the child lived and resided for a period of six months in the home of the petitioners (La Fevers) before the making of the order; that this is necessary because § 58 209 W.C.S. 1945, requires that the child "shall have lived and resided for a period of six (6) months in the home of the petitioners in such adoption proceedings."

It would seem that where the court found as follows: "After due investigation this court is satisfied that Mr. and Mrs. Charlie La Fever have had the *absolute care, custody, support and control* of said minor child for a longer period than six months immediately preceding the date of filing their petition herein; that they have taken care of said child the same as if he were their own natural born son"; that such a finding would warrant most anyone in believing that the child had lived and resided with petitioners more than six months. In the event that such a finding be considered ambiguous then recourse may be had to the pleadings. As stated in State vs. District Court 37 Wyo. 169-185, 260 P. 174, "A statement of findings in a judgment is not necessary to its validity."

The petition for adoption had the necessary aver-ments with respect to residence in it. Additionally the consents of both natural parents so stated. "Where the language of a judgment is ambiguous or its meaning doubtful, reference may be had to the pleadings in the case, and the judgment interpreted in the light which they throw on it." 49 C.J.S. 870 § 438; Evans vs. City American Falls (Idaho) 11 P. (2d) 363, 367; George vs. Jenks (Wash.) 85 P. (2d) 1083, 1084; Quigley vs. Mc-Intosh 103 P. (2d) 1067, 1074; Black on Judgments Vol. 1 § 123; Freeman on Judgments 5th Ed. § 77.

Specifications of Error No. 3, that the trial court's order was contrary to the evidence, and Specification of Error No. 4, that the trial court grossly exceeded its discretionary power, will be considered together.

A child is not in any sense of the word like a horse, a cow or chattel. Therefore, in considering the last named assignments of error we will endeavor to render a judgment in the light of and in harmony with that which is for the best interests and welfare of the child, having in mind always the child's happiness and well being. This is a principle adhered to in a number of cases de-

cided by this court where the custody and control of a child is in dispute. That is so, even though the adoption proceedings were invalid with respect to the custody and control of the child by the adoptive parents.

As was stated by Judge Riner speaking for this court in Morris vs. Jackson 212 P. (2d) 78-82: "The legal right of the parent is secondary to the best interests of the child and such right will not be enforced where it is not advantageous to the child." Jones vs. Bowman 13 Wyo. 79, 77 P. 439, 67 L.R.A. 860; Tytler vs. Tytler 15 Wyo. 319 89 P. 1, 123 Am. St. Rep. 1067; Harris vs. Muir 24 Wyo. 213, 157 P. 26; Madson vs. Humane Society 25 Wyo. 338, 169 P. 336; Stirrett vs. Stirrett 35 Wyo. 206, 248 P. 1; Curran vs. Curran 51 Wyo. 217, 65 P. (2d) 243. Kennison vs. Chokie 55 Wyo. 421, 100 P. (2d) 97.

Were it not for the cardinal principle referred to above, that courts will first and above all other things look to that which is for the best interests and welfare of the child, we could very well dispose of this case upon the authority of Eblen vs. Eblen 234 P. (2d) 434, and the cases there cited. As stated by this court many times the trial court had the witnesses before it, which gives that court the better opportunity to judge of their character and credibility.

Without quoting at length from the records of the testimony taken at the trial it is apparent that the child Ronald is happy in the fine home of the La Fevers. Charley La Fever is worth some One Hundred Fifteen Thousand ($115,000.00) Dollars, has a business that pays him some Thirty Thousand ($30,000.00) or Forty Thousand ($40,000.00) Dollars before taxes. He is providing insurance for Ronald in the sum of Twenty-Five Hundred ($2,500.00) Dollars which is to be paid up when Ronald is twenty-five (25) years of age. The La Fevers expect to make Ronald their heir. Ronald is permitted to visit his natural parents almost at will.

Both the natural and adopted parents are kind to him. As an indication of the relationship of Ronald toward his natural parents, the Hiatts, and his adopted parents, the La Fevers, it is shown in the record that while recovering from a tonsil operation at the home of the Hiatts, Ronald cried and asked to be taken to the home of the La Fevers. The Hiatts notified the La Fevers and Ronald was taken there.

Our survey of the evidence taken at the trial shows that the residence of Ronald for the six months' period before the order of adoption was in the La Fevers' home. True, the child was not kept at all times upon the premises of the La Fevers. A legal residence does not require that a child be kept as prisoner in order to comply with the statute as to a six months' residential period. A substantial compliance with the statute was had. See Nugent vs. Powell 4 Wyo. 173-187, 33 P. 25, 1 Am. Jur. 625 § 6.

There is substantial evidence in the record clearly showing that the trial court was warranted in finding Ronald was a bona fide resident under the statute in the home of the La Fevers. See Hawks & Warren vs. Creswell 60 Wyo. 3, 20, 144 P. (2d) 129.

We are of the opinion that it is for the best interests and welfare of the child Ronald Eugene Hiatt that he remain with the respondents Charley La Fever and Anna La Fever. Finding no error in the record the judgment of the trial court is affirmed.

*Affirmed.*

BLUME, C. J., and RINER, J. concur.