In the Matter of the Adoption of BABY CURTIS, to be Known as Curtis Dear.

JUDITH JEAN SMITH, Petitioner and Appellant, v. FRED NATHANIEL DEAR, Respondent.

No. 10575.

Submitted December 10, 1963. Decided March 5, 1964.

390 P.2d 209.

Graybill, Bradford and Graybill, Leo C. Graybill (argued), Great Falls, for appellant.

Charles C. Lovell, Church, Harris, Johnson and Williams, Great Falls, Garlington, Lohn and Robinson, Missoula, Charles C. Lovell, Great Falls, and Sherman V. Lohn (argued), Missoula, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment and decree entered on Findings of Fact and Conclusions of Law, which decree confirmed a prior order of adoption.

On May 17, 1958, an illegitimate child, known as Baby Curtis, was born to appellant. The respondent acknowledged the child as his. At the time of birth, both natural parents were unmarried. Appellant mother lived in Missoula, Montana, from

about September 1958, until October 1960. Respondent father lived and resided in Cascade County. Respondent supported appellant and the child for a time from birth. Appellant rejected respondent's proposals of marriage.

Respondent then married appellant's mother, who will be referred to as respondent's wife. Subsequently, respondent sought to adopt Baby Curtis. Appellant agreed, and the two consulted a Missoula attorney.

On March 30, 1960, the positively verified joint petition of appellant and respondent was filed in the district court of Missoula County praying that the court enter an order of adoption awarding Baby Curtis to respondent. The petition recited in part as follows:

"(1) That your Petitioner, Fred Nathaniel Dear, is the natural father of Baby Curtis, and that said child was born out of wedlock to your petitioner and Judith Jean Williams, who is said child's natural mother.

"(2) That your Petitioner, Fred Nathaniel Dear, is forty-six (46) years of age, is a citizen of the United States, and a resident of the State of Montana for forty-six (46) years, and that he is of the white race, and more than ten years older than said child, and is at present a resident of Cascade, Montana, is married and resides on a ranch near Cascade, Montana. And that your petitioner, Judith Jean Williams is 21 years of age and resides in Missoula, Montana, and is unmarried, and that said child is now in her custody.

"(3) That said child, Baby Curtis, was born in Spokane, Washington, on May 17, 1958.

"(4) That said child has no property of any kind.

"(5) That your Petitioner, Judith Jean Williams, the natural mother of said child, has given her full consent to the adoption of said child by your Petitioner, Fred Nathaniel Dear, who is the natural father of said child, and that said child bear his name.

"(6) That it is for the best interest of said child that the

natural father and Petitioner herein, be allowed to adopt said child, for the reason that the said child's natural mother is unable to support said child and care for, maintain and educate said child, and that the natural father is now married and has a good home in which to raise said child and is well able financially to care for, support, maintain and educate said child and will give said child a good Christian home and background, and has all the affection of a natural father for said child.

"(7)  That your petitioner, Fred Nathaniel Dear, wishes said child to bear his last name, which is the right of said child as the natural son of said petitioner, and prays that said child's name be changed to Curtis Dear.

"(8)  That the wife of your Petitioner, Fred Nathaniel Dear, namely, Nina Margaret Dear, has filed her consent in writing to said adoption.

"WHEREFORE, your Petitioners, the natural father and mother of Baby Curtis, infant child herein, join in this petition, and pray this Court for an order of adoption, legally awarding said child to the Petitioner Fred Nathaniel Dear, and that said child be henceforth known and named as Curtis Dear."

With this petition was filed a "Consent of Wife to Adoption" by Nina Dear, respondent's wife; a "Consent of Mother to Adoption" by appellant; and an "Agreement of Father Adopting Child" by respondent.

On the same day in open court, the appellant, the respondent and the respondent's wife testified in favor of the adoption. A decree of adoption was entered.

On the same day, and prior to entry of the adoption order, appellant and respondent executed a written agreement prepared by their attorney that the child "may be in the custody of his natural mother * * * during the winter and school months of the year * * *."

This unusual arrangement can only be explained, if need be, by the strange family relationship described above.

After the adoption, respondent received custody of the child, then approximately two years old. According to respondent's version, the child was retarded and had been abused. In any event, respondent refused to allow custody in the appellant natural mother. The child lived with respondent and his wife on their ranch.

Meantime, from a record not too clear, appellant had been married, divorced, and remarried and had given birth to another child. Some two years after the adoption of Baby Curtis, on January 15, 1962, appellant filed a petition to vacate the adoption decree. The grounds of the petition were threefold: (1) that her agreement to the adoption had been obtained by fraud; (2) that since respondent's wife did not join in the adoption, it was void under the statute; and (3) that since the adoption took place in Missoula County, rather than Cascade County, it was likewise void under the statutes.

The petition was met by a motion to quash on grounds, among others, that the original decree was res adjudicata, that the court lacked jurisdiction to vacate the decree, and that the validity of the decree and the issue of fraud could not be tried in summary fashion.

However, a hearing on the petition to vacate the decree was held on March 12, 1962, and after hearing and briefing by both parties, the court made findings and conclusions, and confirmed the adoption. A partial quotation from the trial court's conclusions is as follows:

"That whether in law, petitioner's attack upon the decree of adoption, which she herself joined, voluntarily, in procuring from this court is direct or is collateral, petitioner is estopped from any attack upon this court's decree under the circumstances of this case, as it presently stands before this court;

"That the physical well being of Baby Curtis Dear requires that the adoption heretofore decreed remain presently undisturbed;

"That in the proceedings had by the parties before this court

on the 30th day of March, 1960, jurisdiction obtained, decree was regularly uttered, and no fraud was perpetrated upon petitioner thereby."

The appellant lists eight alleged errors which are grouped for argument. We shall adopt these groupings but in a different order. They are:

(1)  Whether any proof of fraud in securing the adoption existed;

(2)  Whether one who petitions a court for an order of adoption, appears in open court to testify in support thereof, and after entry of a decree, absent fraud, is estopped to deny the validity of the decree; and

(3)  Whether the trial court erred in admitting certain evidentiary matters covering conduct of the parties and looking to the interests and welfare of the child.

As to the fraud alleged, the trial court specifically found no fraud was proven. We have checked the record thoroughly and find too, a complete absence of any testimony or proof of fraud. It seems to be appellant's thought that since the respondent father did not abide by the separate agreement as to custody of the child, that, in and of itself, demonstrated fraud. Even assuming that, standing alone, this would raise a suggestion of fraud, the respondent father and other witnesses explained the reasons for the failure to deliver custody as agreed. Certainly, their explanations, if believed, were reasonable and completely avoided any suggestion of fraud. The reasons given, in summary, were that the child's best interests and welfare demanded the course of action taken. More will be said concerning these matters in our discussion of the third problem above.

■  Next, absent any fraud, does an estoppel arise against one who joined in a petition for adoption voluntarily, testified in support of it, later acted upon and accepted it as valid, then later in summary proceedings attack the decree?

The trial court found that it does, and we agree.

336

The appellant's approach is that under the statutes, R.C.M. 1947, §§ 61-201 to 61-213, the "Uniform Adoption Act," the adoption is void in that the court had no jurisdiction on two grounds hereinafter set forth. The appellant argues that an estoppel cannot arise where the court never had jurisdiction; or, put another way, that jurisdiction can be attacked at any time.

The two grounds set forth by appellant are: (1) that respondent was not a person who could legally adopt the child; and (2) that the adoption was not in the proper county.

R.C.M.1947, § 61-203, provides:

"*Who may adopt.* The following persons are eligible to adopt a child:

"(1)   A husband and wife jointly, or either the husband or wife if the other spouse is a parent of the child.

"(2)   An unmarried person who is at least 21 years old.

"(3)   A married person at least 21 years old who is legally separated from the other spouse.

"(4)   In the case of an illegitimate child, its unmarried father or mother."

R.C.M.1947, § 61-204, provides:

"*Venue.* Proceedings for adoption must be brought in the district court of the county where the petitioners reside."

We shall summarily dispose of this second matter first. Appellant argues that since respondent had his residence in Cascade County, that the district court of Missoula County did not have jurisdiction as distinguished from venue. First of all, one of the joint petitioners, the appellant was a resident of Missoula County. Secondly, district courts in Montana have general jurisdiction. (Montana Constitution, Art. VIII, § 11.) The statute is specific, it relates to venue.

Next, under R.C.M.1947, § 61-203, appellant argues that respondent is not an eligible person to adopt since he does not fit specifically any of the described categories. We view this argument as hypertechnical. But, it is by this approach that

appellant argues that since respondent was not technically an "eligible person," the district court did not have jurisdiction over the subject matter.

However, we find this argument pointless. The adoption decree appellant successfully obtained is now res adjudicata, and she cannot attack its validity under these circumstances. One cannot repudiate a judicial order she herself obtained. (Continental Oil Co. v. McNair Realty Co., 137 Mont. 410, 353 P.2d 100; Christie v. Morris, 119 Mont. 383, 176 P.2d 660.) This principle of law has been recognized by this court, and in adoption proceedings has been recognized in many other states.

In the case of In re Martin's Adoption, 269 App.Div. 437, 56 N.Y.S.2d 95, 97, 98, a joint petitioner in an adoption attempted to set aside the order of adoption upon the ground that the court was without jurisdiction to have granted the same. The New York Court said:

"Without deciding the other objections raised by the appellant, we are of the opinion that appellant is estopped from questioning the jurisdiction of the court. It is not disputed that the court had jurisdiction of the subject matter. Petitioner will not now be heard to question the appearance and consent of the natural father which he, the petitioner, presented to the court. * * *

"* * * where a person invokes the jurisdiction of a court, he will not be heard to repudiate the judgment which that court entered upon his seeking and in his favor. * * * His position now is inconsistent with the decree of adoption he obtained. The action which he seeks to take is contrary to the object he achieved by the decree of adoption. In such circumstances, appellant is estopped from challenging the original adoption decree."

The same principle of estoppel has been applied in numerous cases to one who has successfully petitioned the court for the adoption of a child. See Hopkins v. Gifford, 309 Ill. 363, 141

N.E. 178; In re Reichel, 148 Minn. 433, 182 N.W. 517, 16 A.L.R. 1016; Annot.: 27 A.L.R. 1365; 142 A.L.R. 122; 171 A.L.R. 1315.

As opposed to Hopkins v. Gifford, supra, in Illinois, appellant cites Ashlock v. Ashlock, 360 Ill. 115, 195 N.E. 657, in which the Illinois Court held there is no estoppel by judgment where there is a want of jurisdiction of either the subject matter or of the persons. The Ashlock opinion cited as authority Keal v. Rhydderck, 317 Ill. 231, 148 N.E. 53. In the Keal Case, the dissenting opinion pointed out that the majority was overruling Hopkins v. Gifford, supra, even though not mentioning that case expressly. Thus, we see the difficulty other courts have had with the application of an estoppel by judgment.

However, we think the application of the rule is proper where, as here, we deal with the status in life of a child of tender years. In the original adoption proceeding, the appellant mother confessed her inability to support and care for the child, and the court so found as a fact; appellant rid herself of the custody of Curtis, and thus received a substantial benefit by the decree.

Appellant argues, however, that since she did not receive the custody rights under the separate agreement, she received no benefit. Our discussion above disposes of this.

This brings us to the third matter which is actually inter-related. Appellant poses the third matter as:

(3) Whether the trial court erred in admitting certain evidentiary matters covering conduct of the parties and looking to the interests and welfare of the child.

The appellant's position is that since the issues were framed as to the validity or invalidity of the decree; that the custody of the child was not an issue; that the court was in error in allowing any evidence as to the child's status and welfare. Viewing the trial court's conclusion on estoppel by judgment as the heart of the matter, it follows that regardless of how the issue is attempted to be framed, the court's obligation as to a child of tender age is to be concerned with its welfare.

As put in 2 C.J.S. Adoption of Children, § 45, at page 436:

"Welfare of Child. The welfare of the adopted child is ordinarily the controlling circumstance in applications of this nature * * *."

Recently this court In the Matter of Young, 143 Mont. 230, 388 P.2d 379, recognized that welfare of the child is important. That case concerned custody, but the same principle applies.

In Haynes v. Fillner, 106 Mont. 59, 71, 75 P.2d 802, another custody case, this court said:

"* * * It is well settled that where a natural parent has voluntarily relinquished his child to another and there has grown up a reciprocal affection between the foster parent and the child, the court may refuse to disturb those relations at the request of the parent if the best interests of the child so require."

Also, in the Haynes case this court recognized the principle of estoppel as we have previously discussed in this manner:

"One other method, and one which is recognized by the authorities generally as above noted, is by estoppel or waiver of the right of the parent by the voluntary establishment of new relations permissively, as here, and where the best interests of the child require those relations thus created to continue."

It is true that the foregoing are custody cases as distinguished from adoption, but we see no reason for any difference as applied here. The appellant recognized this early in the proceedings when she introduced evidence of her marital status and ability to provide a home. In addition, the only basis she had for asserting fraud in her pleadings was the refusal of the respondent to perform under the separate custody agreement. Everything about the case cries out for inquiry by the court into the welfare of the child.

The Wyoming Court in In re Adoption of Hiatt, 69 Wyo. 373, 242 P.2d 214, 218, upheld an adoption decree as against the natural parents who had charged fraud and jurisdictional defects and said:

"A child is not in any sense of the word like a horse, a cow

or chattel. Therefore, in considering the last-named assignments of error we will endeavor to render a judgment in the light of and in harmony with that which is for the best interests and welfare of the child, having in mind always the child's happiness and well being. This is a principle adhered to in a number of cases decided by this court where the custody and control of a child is in dispute. That is so, even though the adoption proceedings were invalid with respect to the custody and control of the child by the adoptive parents."

Under all of the facts and circumstances here, we find it was not error for the trial court to allow evidence concerning the child's care, status and welfare.

We have reviewed all of the various authorities cited in briefs of both parties although we have not attempted to discuss nor distinguish each of them.

Under the circumstances existing here, we do not find prejudicial error to have been committed, and so affirm the judgment and decree of the district court.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and DOYLE concur.