**In the Matter of the ADOPTION OF D. P.**

**In the Matter of the ADOPTION OF F. P.**

**No. CF 1.**

Supreme Court of Wyoming.

Aug. 17, 1978.

George L. Arnold, Director, Wyoming Legal Services Program, and Ronald D. Copenhaver, Student Intern, Wyoming Legal Services Program, Laramie, for appellant.

---

Arthur L. Garfield, Cheyenne; and Jack R. Gage, of Hanes & Gage, P.C., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLIN-TOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

■ These appeals are from the entry of separate final decrees of adoption affecting the care and custody of two minor boys. Appellant is the mother of the boys, while the appellee is the stepmother of the father of D.P. At the time of D.P.'s birth, his mother was not married. The other boy, F.P., was born while appellant was married to a man unrelated to appellee. On November 21, 1975, separate interlocutory decrees of adoption were entered—premised on written consents to the adoptions filed by the appellant and the natural fathers of the children—awarding care and custody to appellee and her now-deceased husband. On April 23, 1976, appellant sought to withdraw her consent to the adoptions, alleging that her consent had been procured by fraud, undue influence and misstatements concerning the true nature of the adoption proceedings. On April 12, 1977, appellee petitioned for final decrees of adoption, which was resisted by appellant on various grounds.[1] After a hearing, the district court entered findings of fact and conclusions of law, and approved the final decrees of adoption. We will affirm.

As a basis for disposition of this matter, the district court made the following relevant findings and conclusions:

### "FINDINGS OF FACT

\* \* \* \* \* \*

"19. That throughout the initial proceedings, [appellant] executed a total of five (5) verified Consents for Adoption and signed her name a total of ten (10) times before a Notary Public; and said consents were signed by [appellant], who had full opportunity to examine each and every one of the Consents, full opportunity to read the contents thereof, full opportunity to refuse to execute the same, full opportunity to seek other counsel, and full opportunity to reflect upon her decision with regard to the Consents to Adoption.

\* \* \* \* \* \*

"22. That [appellant] read or should have read the Consents to Adoption filed herein; that she knew or should have known the contents of the Consents to Adoption filed herein; that she had ample opportunity and was not coerced in the execution of the Consents to Adoption, filed herein; that although [appellant] had undergone medical treatment in the months previous to the execution of the Consents to Adoption, this fact nevertheless did not interfere with her ability to reason and take effective steps over a period from August 19, 1975 through December 1 of that same year relative to the minor children herein.

"23. That the Court finds that it is in the best interests of the minor children, [D.P.] and [F.P.] that the Petitions filed herein by [appellant] be denied and that the Petition[s] for Adoption, filed herein by [appellee] and [her husband], now deceased, be granted to [appellee].

\* \* \* \* \* \*

### "CONCLUSIONS OF LAW

\* \* \* \* \*. \*

"5. That [appellant], failed to meet the burden of proof required to show that fraud was committed in obtaining of the Consents of Adoption, executed by her.

"6. There is no basis in law, nor is the evidence of alleged fraud sufficient to justify the withdrawal of the Consents for Adoption, in the voiding of the Interlocutory Decree[s] of Adoption previously granted by this Court."

The issues on appeal can be summarized as follows:

---

1. Appellant asserted, inter alia, that the interlocutory decrees were void due to the intervening death of appellee's husband, and that appellee had lost her eligibility to adopt by becoming a non-resident of Wyoming. Appellant did not raise these issues on appeal, and we see no reason to address them.

1. Whether appellant sustained her burden of proving that her consents were not voluntary; and

2. Whether the district court abused its discretion with regard to the best interests of the children.

## CONSENT

▋ Unless the circumstances indicate a situation wherein the consent of both parents of a child is not required (§ 1–710.2, W.S.1957, 1975 Cum.Supp.) [§ 1–22–110, W.S.1977], an adoption may be decreed only when both parents have filed written consents. § 1–710.1, W.S.1957, 1975 Cum.Supp. [§ 1–22–109, W.S.1977]; and 2 Am.Jur.2d, Adoption, § 24. Such consents were filed in these cases, but the appellant—subsequent to the entry of the interlocutory decrees of adoption—sought to withdraw her consents. Assuming, arguendo, that there was no statutory impediment to her withdrawal of consent[2], it was appellant's burden to prove actual fraud or duress. 2 Am.Jur.2d, Adoption, § 47. See, generally, Annot., "Undue Influence—Consent to Adoption," 50 A.L.R.3d 918; Annot., "Revocation of Consent to Adoption—Mistake," 74 A.L. R.3d 489; and Annot., "Duress in Obtaining Consent to Adoption," 74 A.L.R.3d 527.

▋ When fraud is alleged—in the context of an adoption consent—the representations must relate to a past or existing fact, and may not ordinarily be predicated upon a representation which relates to the future. *In re Adoption of Hiatt*, 69 Wyo. 373, 242 P.2d 214, 216. Fraud must be established by clear and convincing evidence. *In re Adoption of Hiatt*, supra. Duress has been said to exist whenever one, by the unlawful act of another, is induced to perform some act under circumstances which deprive him of the exercise of free will (25 Am.Jur.2d, Duress and Undue Influence, § 1), while undue influence is established when the free agency of the person influenced is taken from him or destroyed, and in its place the will of another person substituted (25 Am.Jur.2d, Duress and Undue Influence, § 36). The factors utilized in determining the presence of fraud, duress or undue influence are extensively set forth in the annotations cited above. Suffice it to say, their presence depends largely on the facts and circumstances of the individual case.

▋ In the present cases, the district court found that there was sufficient evidence to establish the voluntariness of appellant's consent to the adoptions. An exhaustive review of the record supports that finding. In August, 1975, appellant, appellee, and the appellee's deceased husband met with an attorney to discuss the possibility of adoption. The attorney testified that appellant indicated a desire to proceed with adoption proceedings and the legal implications of adoption—as opposed to temporary custody—were discussed. The individual who notarized the written consents to adoption, executed by appellant, also testified that appellant had stated that she wanted appellee to adopt the children. Like testimony was given by the appellee and by a babysitter for the children. We find that this evidence, as well as that set out by the district court in its findings of fact, is more than adequate to sustain the

2. Appellee moved to dismiss appellant's petitions to withdraw consent on the ground that § 1–710.3, W.S.1957 [§ 1–22–109, W.S.1977], rendered her consents irrevocable after entry of an interlocutory decree. Section 1–710.3, supra, provided:

"Withdrawal of any consent filed in connection with a petition for adoption hereunder, shall not be permitted, except that the court, after notice and opportunity to be heard is given to the petitioner, to the person seeking to withdraw consent, and to any agency participating in the adoption proceedings, may, if it finds that the best interests of the child will be furthered thereby, issue a written order permitting the withdrawal of such consent. *The entry of the interlocutory or final decree of adoption renders any consent irrevocable.*" [Emphasis supplied]

Since the district court chose not to dismiss appellant's petitions on this basis—it merely denied the petitions because of a failure of proof—we need not address ourselves to the issue. It is noted, however, that this statutory provision was amended in 1977. § 1–22–109(d), W.S.1977. For a discussion of this general area, see Annot., "Right to Withdraw Consent to Adoption," 74 A.L.R.3d 421.

decrees entered herein. Conflicts in the evidence do permeate the record, but such conflicts have been permissibly resolved against the appellant—and we cannot—under these circumstances—substitute our judgment for that of the trial court on findings of fact. *Wyoming National Bank of Casper v. Security Bank & Trust Co,,* Wyo., 572 P.2d 1120; and *Alexander v. Kadolph*, Wyo., 562 P.2d 313.

## BEST INTERESTS OF THE CHILDREN

■ As stated by Justice Ilsley, in *In re · Adoption of Hiatt*, supra:

"A child is not in any sense of the word like a horse, a cow or chattel. . . ."

And, as was stated in *Morris v. Jackson*, 66 Wyo. 369, 212 P.2d 78, 82:

"'. . . [T]he legal right of the parent is secondary to the best interest of the child, and such right will not be enforced where it is not advantageous to the child.'"

In the present cases, the court had available to it detailed social summaries on the various parties to these actions; and it was aware that the children had lived with appellee since August, 1975. We find no basis on which to say that the court abused its discretion in awarding the care and custody of these children.

■ Appellee's request for an assessment of costs, attorney's fees and damages under Rule 72(k), W.R.C.P., is denied.

Affirmed.

RAPER, Justice, specially concurring.

I concur specially, not because I disagree with the premises upon which the court founds its conclusions as far as it went, but because there are features of this case that must not be overlooked. I thoroughly agree that the court was entirely correct in finding that the consents to adoption were not obtained by fraud, undue influence, and misrepresentation. That was a question of fact to be decided by the trial judge, as pointed out in the court's opinion.

There were other issues in the case which I believe ought to be mentioned, so that no question or impression will be left that the trial court did not consider them or that we did not consider them important enough to discuss. Fortunately, the legislature has restored reason and purpose to an interlocutory decree. As mentioned by the court's opinion here in its footnote 2, there was a provision in old Section 1–710.3, W.S.1957, 1975 Cum.Supp., in effect when this case was heard by the trial court, which provided that "The entry of the interlocutory or final decree of adoption renders any consent irrevocable." That provision rendered entirely useless any provision of the then existing adoption laws providing for withdrawal of a consent for cause and as far as the natural parent was concerned negated any purpose of a waiting period between the entry of an interlocutory and a final decree.

To his credit, the trial judge did not rely upon that provision of the law but went ahead in his findings and conclusions of law and gave effect to the genuine purpose of the waiting period, pointing out that

"'The requirement is to prevent an unduly precipitated action; it is intended for the benefit of all parties to the adoption proceedings, including the natural parents, and it is aimed at determining with some certainty whether the child's best interests will be promoted by the adoption.'" 2 C.J.S. Adoption of Persons § 50, at p. 469.

There was some conflicting evidence as to whether the natural mother's consent was precipitated by ill health and whether there were changed conditions due to the death of the adoptive father justifying the denial of a final decree.

It has been my observation that there is probably a tendency to undervalue the rights of the natural parent and base a decision on what person is the most affluent and provides more physical benefits to a child. There is no finding by the court here that the natural parent is unfit. For that reason, there should not only be concern about the interests of the child but also the interests of the natural parent. While set

in a background of the nonconsenting parent, in *Matter of Adoption of Voss*, Wyo. 1976, 550 P.2d 481, the principles there stated are also applicable to the ill-advised consent of a natural parent made under the stress of misfortune and in the light of then existing circumstances, since changed. The relationship of parent and child is a sacred tie and parents have the first and natural right to their children. Adoption tears apart that relationship and for that reason courts should cautiously guard the natural, warm relationship and love of a parent for his or her child, a precious right. If the natural relationship can be rescued, then it should be. The interlocutory period affords an opportunity for that possibility.

I think it should be pointed out that the trial judge specifically in his findings did not overlook the parental rights but could not under the evidence find that the natural parent-child relationship could be retained, the best interests of the child being so overwhelming and in areas other than affluence, thereby overcoming the balance between rights of the natural parent and best interests of the child, a delicate problem.