Perry K. LIEUALLEN, Appellant
(Plaintiff below),

v.

NORTHERN UTILITIES COMPANY,
Appellee (Defendant below),

and

State of Wyoming, through the Workman's Compensation Department ex rel. The Wyoming State Treasurer, Defendant below.

No. 3036.

Supreme Court of Wyoming.

Feb. 27, 1962.

Thos. J. Fagan, of Fagan & Fagan, Casper, for appellant.

Edward E. Murane, of Murane, Bostwick & McDaniel, Casper, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Plaintiff sued defendant to recover damages for injuries to plaintiff allegedly sustained while he was engaged in duties of his employment by White Ditching Company when his employer was installing a gas transmission line for defendant. After defendant generally denied allegations of the complaint and plaintiff had answered defendant's interrogatories, both parties filed affidavits when defendant moved for summary judgment which was granted. Plaintiff appeals.

While the State of Wyoming appears in the action as a party defendant, its position in the case requires no discussion except perhaps to note that through its compensation department plaintiff received compensation for his alleged injuries as an employee of White Ditching Company.

Plaintiff claimed that at the time he suffered alleged injury he was operating a caterpillar side-boom track tractor engaged in installing defendant's gas transmission line; that this involved making a connection with a separate gas line which was under defendant's control; that defendant "negligently and carelessly failed to notify plaintiff or plaintiff's employer or its agents, that the said separate gas line contained gas, liquid or fluid under pressure, and negligently and carelessly instructed the plaintiff's immediate employer, White Ditching Company or its agents to open a valve to the said separate gas line for the purpose of making a connection to said line, whereupon there was a loud, voluminous and dangerous escaping of gas, liquid or fluid under pressure from said separate gas line, and plaintiff, recognizing the danger that his running tractor created, and recognizing the explosion that could possibly result," hastily jumped from the tractor he was operating to shut off its motor in order to eliminate the possibility of explosion and in so doing sustained an injury for which recovery was sought.

Winnowed to their essentials, the material allegations of the complaint are: (1) The pipeline was under defendant's control, (2) defendant negligently failed to notify plaintiff or his employer the line contained gas and fluid under pressure, (3) defendant negligently instructed plaintiff's employer to open the valve which released gas and fluid, and (4) plaintiff was thereby injured.

Plaintiff's answers to sixty-one interrogatories propounded by defendant added nothing of importance.

One affidavit submitted by defendant was that of the foreman of White Ditching Company under whom plaintiff was working. It stated White Ditching Company was engaged in cutting a ten-inch gas line owned by defendant in order to tie in a sixteen-inch line; that this made it necessary to "blow down the 10″ line so as to remove all gas"; that to blow down the ten-inch line, a three-inch blow pipe was tapped into the top of the ten-inch line with enough of the three-inch pipe to come above the ground surface so that the gas under pressure would not blow dirt and to protect "from anything that might come out of the pipe"; that before opening the valve affiant had plaintiff "standing by with the side-boom cat—he was approximately 80′ northeast of the blow-down pipe with his engine running"; that when the valve on the ten-inch line was opened "it permitted gas to blow out of the 3″ blow-down pipe" with a loud noise; that the gas blew for approximately one minute, then a mixture of "water and oil went up into the air in a spray umbrella formation", and the "en-

tire blow-down did not take over three to five minutes." Affiant also said there was little or no danger in the operation and that "usual and customary procedure" was followed; that "many lines have condensation [water] and occasionally lubricating oil in the pipes", but affiant "was surprised when the fluid blew out", some of which got on his clothes, but he was not frightened; that after the blow down, plaintiff used the side-cat boom and carried on his duties in an ordinary and normal manner, making no complaint to affiant, and plaintiff "did not act in any way disabled or suffering any disability." In addition, affiant said the president and part owner of White Ditching Company had instructed affiant to do that particular job and "one of the plant personnel" told affiant the valves on the section were closed "so we could blow down this particular section"; that "once the valve is closed on the ends of the section then we are in charge of that section of pipe"; that the president of White Ditching Company would normally tell affiant what work was to be done and affiant would carry out the orders; that the president of White Ditching Company told affiant "to make the tie in with the 10″ and 16″ line in the yard and left the operation to me", and the defendant's personnel told affiant that the valves on the ten-inch line had been shut. Finally this affiant said he did not "consider this blow-down operation hazardous or particularly dangerous"; that affiant had done several such jobs and considered the job "routine pipeline procedure" and had "often run into fluid in a pipe"; that affiant "did not consider the cat as in a dangerous position" when affiant opened the valve; that affiant "knew this line had gas in it under pressure of up to 200 to 250 pounds before I opened the valve"; that affiant knew "the cat motor was running"; and knew "the fact there was condensation and lubrication oil in the line did not make the operation more dangerous than as if there had only been natural gas in the line."

 It seems plain that this affiant's statement that "one of the plant personnel" told affiant the valves on the section had been shut should be understood as meaning the defendant's personnel had told affiant that those valves had been shut, in the light of affiant's further statement to that effect. These statements, taken with other positive and unequivocal factual averments of the affidavit, would have been admissible in evidence respecting the issue of who was in control of the operation from which plaintiff sustained alleged injury. It thereupon became incumbent upon plaintiff to set forth specific facts in opposition if plaintiff's contention in this respect was to remain a genuine issue of fact for the trial. Rule 56(e), Wyoming Rules of Civil Procedure. The affidavit also shows affiant by actual experience was possessed of qualifications which would make his opinions admissible in evidence as an expert respecting matters within his knowledge occurring in the type of operation under scrutiny. These opinions developed that the blow-down operation was not hazardous or particularly dangerous; that the job was routine; that the cat was not in a dangerous position when the valve was opened, although affiant knew the line was under pressure of 200 to 250 pounds and that the cat motor was running, and that the condensation and lubricating oil in the line did not make the operation more dangerous than if there had only been natural gas in the line.

Another affidavit submitted by defendant was that of the part owner and president of White Ditching Company who stated his company had a contract with defendant for the installation referred to herein; that the foreman in charge of the operation for White Ditching Company was an experienced operator; that the normal "chain of command" was for affiant to get instructions from defendant's engineer and pass them to the foreman of White Ditching Company, to whom it was unnecessary to give detailed instructions because of his experience; that "we knew at that time that it would be necessary to blow down one piece of line which is about a hundred and twenty feet in length in a ten-inch line", and "that the pipe was under pressure of

from 200 to 250 pounds per square inch"; that affiant knew "this line was connected to the discharge side of compressors which would normally discharge a certain amount of lubricating oil and condensation into the line, so that in blowing down this line we could anticipate some fluid"; that the procedure followed was the only one known for that type of blow down; that the presence of lubricating oil and condensation would not increase the hazard of tapping the line, but in fact would decrease the combustibility of the gas and reduce its inflammability; that there was no explosion and it was merely a blow-down operation; that White Ditching Company had control of the pipeline section being blown down; that affiant did not consider there was any danger of an explosion due to having the caterpillar motor operating some seventy to eighty feet away; that there is no possible way that the running motor of the cat at that distance could ignite the gas, but if that were possible it could only cause a fire at the blow pipe; that the only way there could be an explosion from gas is when it is confined and then there has to be a proper mixture of oxygen; that there was no danger of an explosion due to the fact the cat motor was running; and that the gas under such pressure is dissipated into the air.

Two things stand out in these affidavits. First, the operation said to have caused the injury was not conducted by defendant but by contract was given into and was under the control of White Ditching Company, the plaintiff's employer. Second, there was no danger of an explosion due to the running motor of the machine being operated by plaintiff.

Rule 56(e) of Wyoming Rules of Civil Procedure says in applicable part:

"* * * When a motion for summary judgment is made and supported as provided in this rule [as by affidavit], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis supplied.)

The only response plaintiff saw fit to make was by his own counter-affidavit. Our examination of this instrument discloses he acknowledges he is an experienced operator of a side-boom equipped track-type tractor and had worked on similar jobs to that described in his complaint, and was familiar with "blowing down" or "blowing out" of lines, but in his experience he never saw any fluid come from lines when they were opened; that he took his instructions from the foreman of White Ditching Company, but he saw and heard men employed by defendant tell the White Ditching Company foreman and other men in the employ of that company what to do; that he did not know the line was going to be blown out, was surprised, and he would not have been where he was with the tractor running had he known.

■ ■ We cannot say that this response met the requirements of Rule 56(e) above noted. It does not set forth specific facts which challenge in any way the truth of defendant's affidavits that the operation from which plaintiff claimed injury was under the control of White Ditching Company rather than under the control of defendant. Plaintiff's affidavit also fails to develop any specific facts indicating there was either a hazard or danger of explosion or that any duty rested upon defendant to advise plaintiff or plaintiff's employer that the line in question would be blown or that it would or might contain fluid in addition to gas. Thus not even an implication remained that a failure of defendant to notify plaintiff or his employer that the line contained gas and fluid was a negligence rendering defendant liable for plaintiff's alleged injury, nor would an instruction by defendant to plaintiff's employer to open the valve which released gas and fluid import a negligent action, even had such

an instruction been given, which, however, the record does not show. It may also be said that nothing in the record before us justifies the fright from which he alleges he suffered.

■ Under the provisions of Rule 56(c), Wyoming Rules of Civil Procedure, a summary judgment, interlocutory in character, may be rendered on the issue of liability alone, even though there may be a genuine issue of fact as to the amount of damages. Because of plaintiff's failure to meet defendant's challenge to the allegations of plaintiff's complaint, by setting forth specific facts which refuted or met that challenge, there was no genuine issue of material fact left, and the only issue remaining was one purely of law.

The summary judgment in favor of defendant correctly decided that issue and it must be affirmed.

Affirmed.