Stella Lee **GODARD**, by her next friend, Arthur R. Godard, Appellant (Plaintiff below),

v.

E. C. **RIDGWAY**, Appellee (Defendant below).

No. 3698.

Supreme Court of Wyoming.

Oct. 14, 1968.

Ross D. Copenhaver, of Copenhaver & Castberg, Powell, for appellant.

G. L. Spence, Riverton, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Stella Lee Godard through her next friend filed a complaint in two counts against E. C. Ridgway for damages in the amount of $52,000, (1) as a result of his negligence (malpractice) as an M.D., and (2) for breach of warranty.

The complaint in the first count stated that defendant was a licensed physician, that plaintiff for compensation employed him to provide her with a contraceptive device and that he undertook as a physician to insert an intrauterine contraceptive device into the uterus of plaintiff on January 6, 1966; that on February 15 plaintiff asked him to inspect the same and he complied, and on May 25 she asked for another inspection at which time defendant caused X rays to be taken of her; that he did not use due care or skill in the services, failed to make the insertion in a proper manner, inserted an unsafe, dangerous, and harmful device, failed to inform her of the dangers and risks incident, incorrectly and negligently in February 1966 diagnosed the position of the device, failed to take X rays, and failed to advise her of the consequences which could result from the facts which he observed or should have observed at the time of the examination; that on May 25 he negligently failed to read or view the X rays and to read the X-ray report made by the radiologist and to advise her of the facts disclosed by the X rays or to treat her for the injury and condition disclosed by them; that by reason of such failure and negligence, plaintiff suffered damage to the uterus, became pregnant, was required to both undergo an abdominal operation for removal of the contraceptive device and a Caesarean section for the delivery of her child, suffered pain and mental anguish, was unable to perform her usual duties, and would have future expense for medical attention and hospitalization; and that plaintiff had been damaged in the sum of $1,500 for hospitalization and medical services, $500 for drugs and help in her home, and was otherwise damaged in the sum of $50,000.

The complaint in the second count stated that defendant for compensation on January 6, 1966, sold her and inserted an intrauterine contraceptive device, known as a "Bow"; that she relied upon the warranties, skill, experience, and judgment of the defendant in the choice of such device and particularly the representation and warranty that such device was fit, proper, and safe for human use; that the Bow was not of merchantable quality, fit, suitable, or safe for human use, but was dangerous and harmful, which facts defendant should have known; and that said device caused and tore holes in the wall of her uterus, passed through such wall into the abdominal cavity, causing her pain, suffering, and mental anguish, caused plaintiff to undergo an abdominal operation and Caesarean section, and medical attention and hospitalization, all to her damage in the amount of $52,000.

Defendant answered, admitting that as a physician he was employed to provide and insert the device for plaintiff but otherwise denied the allegations and affirmatively alleged that she assumed the risk; that her injuries, if any, were not the result of negligence but were unavoidable; and alterna-

tively, that any injuries were the result of the negligence of third parties or negligent manufacture, design, and breach of implied warranties of the manufacturer of the device, which was not sold by him to plaintiff.

Thereafter, following the presentation and answering of certain interrogatories, the filing of depositions from several doctors and plaintiff, and pretrial conference, defendant filed motion for summary judgment. Plaintiff filed an affidavit in opposition, reciting facts purporting to relate to the issues. The court found that there was no genuine issue of any material fact, that defendant was entitled to judgment as a matter of law, and issued summary judgment, from which plaintiff has appealed.

Plaintiff argues that summary judgment was improper because there existed genuine issues of fact to be determined in respect to (1) defendant's negligence and the standard of care required, (2) causation of the injury, (3) resulting damages, and (4) the warranty of the device. To this argument the defendant responds that even assuming all of the assertions of plaintiff to be true and viewing them in the light most favorable to her she failed to make out a prima facie case and accordingly the judgment was properly entered. Developing this argument as to negligence, defendant insists there was no showing that the defendant had or could have had a copy of the manufacturer's instructions at the time of the insertion of the Bow and no showing of the standard of care for the insertion, which existed in Cody or in similar communities, which standard can be established only by expert testimony, here entirely lacking. Defendant's argument concerning the causation aspect is similar, i. e., even if defendant's negligence should be assumed, there was no proof before the court as to the cause of the injury. As to any negligence concerning the X rays, he says such allegations "deal with the question of resulting damage *after* the alleged negligent act of the defendant had already supposedly resulted in the perforation.

* * * the court is called upon to examine into the existence of any evidence which supports any initial wrongful conduct. Moreover, all of the several allegations of negligence which presumably occurred after the alleged perforation also fail for the same reasons mentioned previously in that there is no standard established in the record against which to judge these allegations, no proof of causation, and all of them are tainted with the same suggestion of plaintiff's own contributory negligence or assumption of risk." On the breach of warranty aspect, the defendant urges that the testimony shows the device not to have been unfit for the use intended although unfortunate migrations occasionally occur. Additionally, defendant contends that even though the device were defective and not in accordance with statements made, the principal intendment of the transaction between plaintiff and defendant was that of service rather than product and under well established law there can be no recovery for breach of warranty in such a situation.

■ The four facets in which plaintiff maintains there were genuine issues of fact, coupled with multiple responses of defendant, would seemingly offer a wide area of problems for determination; however, it must be remembered that the presence of a single genuine issue as to a material fact precludes disposition of a cause by summary judgment. Cee-Bee Chemical Co. v. Delco Chemicals, Inc., 9 Cir., 263 F. 2d 150, 153; 35B C.J.S. Federal Civil Procedure § 1141, p. 537. Hypothesizing arguendo defendant to be correct (a) in saying that on the question of negligence in the insertion of the contraceptive device, it was necessary for plaintiff to adduce by expert evidence the standard of care and skill required of general practitioners in Cody or a like community and (b) in arguing that even assuming defendant's negligence, the evidence developed more than one equally probable cause for the perforation, we nevertheless are faced with the matter of defendant's alleged negligence concerning the X rays taken in May 1966.

Plaintiff in her complaint specifically alleged that defendant "negligently failed to advise Plaintiff of the facts disclosed by * * * X-Rays [taken on or about May 25, 1966], and negligently failed to treat the plaintiff for the injury and condition disclosed by such X-Rays," and further, "By reason of the failure of the defendant to use due or reasonable care or skill and by reason of the negligence of said defendant, the plaintiff * * * did suffer great and grievous pain and suffering." Her affidavit in opposition to the summary judgment was to a similar effect.

Defendant gives no authority for his statement that "the court is called upon to examine into the existence of any evidence which supports any initial wrongful conduct" (we assume from his argument that the word "only" is inferred) or his view that the suggestion of contributory negligence on the part of a plaintiff can preclude trial on a complaint of negligence, and we find no merit in such contentions. We address ourselves then to defendant's argument that there is no standard established in the record against which to judge these allegations and no proof of causation.

Plaintiff in her deposition and affidavit indicated extreme pain before the removal of the contraceptive device from the abdominal cavity. Dr. Stiteler in his deposition stated, "From the description of the condition in which the intrauterine device was found at surgery in Billings, I would say the pain [plaintiff was suffering from June through September 1966] was due to the tension on the greater omentum as it wrapped around the bow in the abdominal cavity." Thus, there is obviously no merit in defendant's position as to causation.

Without reference to the doctrine of res ipsa loquitur, which has been the subject of considerable discussion in recent years, the expert testimony in the record is determinative as to standard of care. Dr. Dominick, in the practice of medicine and surgery in Cody, asked "One such [intrauterine contraceptive] device is found floating in the abdominal cavity, isn't it within the usual custom and practice to advise the patient that it is floating [there] * * *," replied, "If the doctor knows, it is, or perhaps if there is symptoms." Asked further, "in the exercise of reasonable care isn't it the obligation or duty of the doctor to inform the patient that that is floating as such," he answered, "I think it depends on the situation, depends on where the patient is, whether the patient is available, and so forth. And, I am not so sure that if there are no symptoms it's so vital that you create a great disturbance with the patient over such a thing. I think I probably would inform my patient, if she were available." According to plaintiff, not only was she available to be told the results of the X rays, she called defendant on the evening the X rays were taken (May 25) and was told he had no report as yet. She called him again on May 26 and was told "the X-ray was just fine * * * it [the Bow] was in place."

Under these circumstances, a genuine issue as to a material fact existed, and the cause must therefore be returned for further proceedings.

Reversed and remanded.