John H. McCLURE et al., Appellants
(Defendants below),

v.

Murray C. WATSON and Louise Maxine
Watson, Appellees (Plaintiffs below).

No. 3973.

Supreme Court of Wyoming.

Nov. 22, 1971.

Harry E. Leimback, and Ronald W. Hofer, of Leimback, Aspinwall & Hofer, Casper, for appellants.

B. J. Baker, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellees.

Before McINTYRE, C. J., PARKER and McEWAN, JJ., and GUTHRIE, District Judge.

District Judge GUTHRIE delivered the opinion of the court.

This case arises on an appeal by the defendants below, appellants here, from the granting of a summary judgment in favor of the plaintiffs below, the appellees here. These parties will be hereinafter referred to as they appeared in the original proceeding.

Plaintiffs filed an action to quiet title to certain lands in Natrona County on March 16, 1970. Thereafter the defendants filed an answer therein asserting an ownership and claim to the oil and gas upon said premises by virtue of and pursuant to an oil and gas lease dated March 1, 1967. It appears, however, that the oil and gas lease under which the answer asserted the claim was superseded by an oil and gas lease bearing date of June 1, 1967, and for the purposes of the argument on this motion it was the later lease and extensions under which defendants asserted their rights.

Inasmuch as the disposal of this matter is dependent upon the term of this lease and its extensions, the operative portions thereof are set out verbatim as follows:

"It is agreed that this lease shall remain in force for a term of 120 days from this date, unless extended as above described, and as long thereafter as oil, gas, casinghead gas, casinghead gasoline or any of them is produced from said leased premises, or drilling operations are continued as hereinafter provided. If at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises but lessee is then engaged in drilling for oil or gas, then this lease shall continue in force so long as drilling operations are being continuously prosecuted on the leased premises; * * *"

The reference to the above-mentioned extension appears in the following clause:

"Anything herein contained to the contrary, is expressly agreed by the parties that if lessees drill an oil and gas well to the Tensleep formation within the primary term herein, this lease will extend to one (1) year from the date herein, it being understood that the Tensleep is approximately 4600 feet."

The term of this lease, however, was extended and the conditions thereof changed by virtue of that certain instrument entitled "THIRD EXTENSION AGREEMENT FOR OIL AND GAS LEASE," being dated January 16, 1968, wherein it is recited as follows:

"* * * the Lessors hereby grant to the Lessees another extension of time from January 15, 1968 to May 1, 1968 and they shall have the opportunity to drill a second well provided the first well is drilled as contained in the lease herein, shall be extended from June 1, 1968 to September 1, 1968."

The following facts are undisputed as they appear in the record: A well for oil was begun on said premises on or about April 10, 1968, and on May 3, 1968, was logged in the Phosphoria formation. An attempt was made to complete said well and put it on production in August of 1968. Some oil was produced and sold to the Rock Island Oil Company. There is nothing in the record showing the amount or the value thereof. The purchaser of said oil, Rock Island, required a ratification from the plaintiffs before payment could be made. Plaintiffs refused to execute such ratification. Thereafter defendants sought permission to deepen this first well through the Tensleep formation. Plaintiffs refused permission so to do on May 7, 1969. At the date of the filing of this suit the well was not in operation nor was oil being produced; nor were there any facilities to produce oil therefrom. On February 27, 1970, all pumps, tanks, and other personal property of the defendants at the well site were sold to satisfy liens which had been foreclosed. Plaintiffs received no payment for any oil by way of royalty, nor were they ever tendered a division order.

Defendants seek to avoid the termination of this lease upon two grounds, asserting that by reason of the refusal of the plain-

tiffs to allow the deepening of said well through the Tensleep sand that they were deprived of an opportunity to develop the same to their profit. They further contend that by reason of the failure of the plaintiffs to execute the ratification required by the purchaser of the oil that the plaintiffs had violated certain express or implied covenants in said lease.

The defendants insist that there is a conflict of material fact in connection with these contentions which makes the granting of the summary judgment erroneous.

The affidavit of plaintiff Murray C. Watson states that he did nothing to prevent defendants from drilling to the Tensleep sand during the term of this lease. Defendants seek to counter this by the following which appears in the affidavit of John H. McClure:

"That after reaching the depth heretofore described the lessors and the plaintiffs herein refused and prohibited the well completion down through the Tensleep Formation, see Exhibit C attached hereto which is a copy of a letter by the plaintiffs which prohibited the drilling of the well through the Tensleep Formation."

Accepting the statement of defendant John H. McClure, as we must, there is still no conflict of fact raised herein. Plaintiffs do not deny that on May 7, 1969, they wrote the letter and refused to give permission to deepen the well through the Tensleep formation.

This permission was sought and denied some eleven months after the expiration of the primary term of this lease as extended, or if it be considered that the specific permission to drill a second well extended this primary term to September 1, 1968, it was still some eight months after that date. Defendant John H. McClure's affidavit negatives any claim that this first well was a producing oil well which would have extended the term of the lease wherein he recites in his affidavit as follows:

"Had we been allowed to proceed through the Tensleep area, *we would*

*have had and developed a producing well which would have been economically feasible to develope * * *"*
(Emphasis supplied.)

In addition thereto, the affidavit of plaintiff Murray C. Watson contains the following uncontradicted statement:

"* * * Various oil and gas liens were filed against the lease and in the summer of 1969 the production from the well ceased entirely and since that time no oil has been produced from the lease."

If this oil and gas lease had expired by its own terms, as it appears from this record, the appellants have cited no authority nor made any suggestion of any rule or principle, legal or equitable, which casts upon these lessors any duty to modify, extend, or change the terms of their original oil and gas lease. Had this lease been in force and effect by its original terms certainly plaintiffs' permission was unnecessary and defendants could have proceeded with such operation.

In connection with the defendants' second contention, it is to be noted that the answer charges plaintiffs with the refusal to execute division orders for the payment of oil and gas so produced. The affidavit of plaintiff Murray C. Watson denies this and no showing is made by the defendants that division orders were submitted to the plaintiffs. The affidavit of the defendant McClure makes no mention of the tender of division orders, but does assert that the purchaser of the oil, Rock Island Oil Company, required a ratification of the lease by plaintiffs and asserts that defendants' attorneys prepared such ratification, which was submitted to the plaintiffs and their attorneys twice, but that "without reason or excuse the lessors refused to sign the ratification agreement."

Defendants, however, did not attach a copy of this ratification agreement to their affidavit, nor is any attempt made to set out the terms thereof or explain just why plaintiffs' actions were "without reason or excuse." A party cannot rely upon conclusions, nor can they be employed by a

court in disposing of a motion on summary judgment.[1]

It is true that motions for summary judgment may only be granted when there is no conflict as to the material facts. However, the rule and Wyoming cases impose a burden on *both parties* to demonstrate to the court the absence or existence of such conflict and this is to be demonstrated to the court through the existence of "specific facts showing that there is a genuine issue for trial."[2] These words of conclusion in defendant McClure's affidavit leave the court entirely at sea and unable to determine whether said refusal to sign this ratification agreement was unreasonable or the plaintiffs acted improperly in their refusal to execute the same. This court has earlier commented on the necessity of the statement of specific facts by parties to such a proceeding.[3]

The judgment of the trial court is affirmed.

GRAY, J., not participating.

---

1. Low v. Sanger, Wyo., 478 P.2d 60, 64; Newton v. Misner, Wyo., 423 P.2d 648, 650; Lieuallen v. Northern Utilities Company, Wyo., 368 P.2d 949, 952; Rule 56(e), W.R.C.P.

2. Rule 56(e), W.R.C.P. See also 3 Barron & Holtzoff, Federal Practice and Procedure, § 1235, p. 146 (Rules Ed.).

3. In re Wilson's Estate, Wyo., 399 P.2d 1008, 1009; Lieuallen v. Northern Utilities Company, supra, 368 P.2d at 951.