**A. J. JOHNSON, Appellant**
**(Plaintiff below),**

v.

**Nick SOULIS and Catherine Soulis,**
**Appellees (Defendants below).**

**No. 4458.**

Supreme Court of Wyoming.

Nov. 21, 1975.

---

Terry W. Mackey of Urbigkit, Moriarity, Halle & Mackey, Cheyenne, for appellant.

Bard Ferrall, Cheyenne, for appellees.

Before GUTHRIE, C. J., and THOMAS and ROSE, JJ.

THOMAS, Justice.

A. J. Johnson brought this action in the district court against Nick Soulis and Catherine Soulis seeking relief in the form of rescission of a sale of an apartment house, damages for loss of income, and punitive damages, and asserting as grounds for such relief fraud and undue influence. A. J. Johnson and Nick Soulis were the active participants in the transaction, and Catherine Soulis appears as a party only because she was named as one of the grantees in the deed to the apartment house. The parties hereafter will be referred to simply as Johnson and Soulis.

In his Amended Complaint Johnson set forth the following allegations of fraud:

"3. That during the course of such negotiations, defendant Nick Soulis made representations to plaintiff, representing that economic conditions were very bad, representing that he would provide plaintiff with an income of $700.00 per month, that he would pay the outstanding mortgage against the premises, that he would permit plaintiff to live in the premises at the rate of $123.00 per month, represented to plaintiff that he would not need an attorney or real estate broker, all of which representations were false, fraudulent, and upon which representations plaintiff relied to his detriment.

\* \* \* \* \* \*

"13. That defendant Nick Soulis willfully and deliberately misled plaintiff by representing to plaintiff that he could reside on the above described real property for his lifetime at a rental amount of $123.00 per month, that plaintiff would receive the sum of $700.00 per month free and clear of any and all other obligations relating to said real property, that economic conditions were such that the value of said real property was decreasing and would not increase, and the purpose of such action on the part of defendant Nick Soulis was to obtain the aforesaid real property at a price which was far below the value of said real property."

Johnson alleged undue influence in the following language:

"9. That during the period of negotiations prior to sale by plaintiff to defendants, defendant Nick Soulis did by visitation to plaintiff, by advising plaintiff about economic conditions, by representations of defendant Nick Soulis' economic acumen, by representations that plaintiff would not need a real estate broker or independent attorney and other words, deeds and acts, unduly influenced plaintiff to plaintiff's detriment."

The events out of which this case arose had their inception in March of 1972 when Soulis and a business associate saw a realtor's advertisement for the sale of an apartment house. Without contacting the realtor they went to see the property, and at that time they discussed the sale of the apartment house with Johnson who identified himself as the owner. There were at least six other meetings at Johnson's apartment house between Soulis and Johnson after this initial contact. In addition,

there were telephone conversations between Soulis and Johnson which related to the sale of the apartment house. This series of contacts and negotiations continued for more than a year until sometime in May of 1973. Then in a telephone conversation Johnson informed Soulis that an owner of some similar property adjacent to Johnson's had told Johnson he would give Johnson $97,500 and better for Johnson's property. Soulis then went to Johnson's apartment building and made a final offer of $100,000. There was a discussion relative to the specific terms of the transaction, and Soulis suggested that Johnson select an attorney to prepare the requisite instruments to formalize the transaction. Johnson did not have an attorney, and indicated he had no preference, so Soulis selected the attorney.

On May 31, 1973, a "Standard Purchase Offer, Acceptance and Receipt" was executed by Johnson and Soulis providing for the sale of the apartment house by Johnson to Soulis. The purchase price established by the agreement was $100,000 to be paid by a $500 deposit, a $19,500 bank draft payable at the time of closing, the assumption by Soulis of an existing loan with the Prudential Insurance Company of America, with a balance of $45,246.92; and a note for the balance of the purchase price from Soulis to Johnson with interest at seven per cent payable monthly over a thirty-year period. Following the execution of this contract Johnson on July 1, 1973 executed a warranty deed to Soulis, and at the same time a note and mortgage were executed by Soulis in favor of Johnson in the principal amount of $34,957.05 with monthly payments of $270.78. The monthly payment was adjusted to provide for a payout over a twenty-year period instead of the thirty-year period provided in the contract because Johnson had asserted at the time the contract was executed that he was to receive $700 per month, and he then was informed by the attorney that the $700 per month was to make the payments on both the Prudential mortgage and the balance owed to Johnson.

Prior to the preparation of the "Standard Purchase Offer, Acceptance and Receipt," Johnson and Soulis had reached an understanding that Johnson could continue to reside in his apartment at a rental of $123 per month, but that in addition he would be expected to maintain the lawn and look after the place, the contemplated rental for the other tenants being $150 per month. About mid-July Soulis advised Johnson that his rent, beginning August 1, 1973, would be $150 per month because it appeared to Soulis that Johnson was not keeping up the lawn. On August 22, 1973, Johnson, through counsel, demanded reconveyance of the apartment house and tendered the return of the purchase price and the down payment. The reasons stated for the demand, while somewhat detailed, were essentially fraud and undue influence.

In October this action was filed, and Soulis answered the Amended Complaint, denying the averments of fraud and undue influence. A pre-trial conference was held which did not substantially narrow the issues posed by the pleadings. The depositions of both Soulis and Johnson then were taken in accordance with the Wyoming Rules of Civil Procedure, after which Soulis filed a Motion for Summary Judgment of Defendants. Following the hearing on Soulis' motion the district court entered the Order Granting Motion for Summary Judgment and Judgment from which Johnson has appealed.

In this Court Johnson contends that it was inappropriate for the district court to grant the Motion for Summary Judgment of Defendants because there were genuine issues as to material facts requiring that the case be tried. In his brief and argument Johnson asserts a genuine issue of material fact with respect to his claim that he was to receive $700 per month from Soulis if he sold the apartment house to him. Johnson also refers to other events as to which the record fails to disclose any

issue with respect to the facts, including Johnson's reluctance to sell to Soulis after many meetings; Soulis' arrangements for an attorney who prepared the documents involved in the transaction; Johnson's raising of his question as to the $700 monthly figure which resulted in the mortgage term being reduced from thirty to twenty years; the arrangement between Soulis and Johnson for Johnson to remain in his apartment at a rental less than other tenants which was terminated within a month after the sale; and the receipt by Soulis of some of Johnson's personal property without payment to Johnson. With respect to these latter assertions Johnson's position must be that the district court incorrectly applied the law in reaching its conclusion that Soulis was entitled to judgment as a matter of law.

■ These contentions do not encompass all of the allegations of fraud and undue influence set forth in Johnson's Amended Complaint, and we treat the other allegations as waived or abandoned. *Western Standard Uranium Company v. Thurston*, Wyo., 355 P.2d 377 (1960); and *Condict v. Ryan*, 79 Wyo. 231, 335 P.2d 792 (1959). We cannot consider further the matter of the personal property Soulis obtained from Johnson since that was not pleaded as a basis for either fraud or undue influence, nor could it be because it related to events occurring after the contract was executed, and for these reasons it could not be material in resolving the issues of this case. *Waters v. Trenckmann*, Wyo., 503 P.2d 1187 (1973).

■ The object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial so that only the latter may subject a suitor to the burden of a trial, the purpose being to eliminate formal trials where only questions of law are involved. *Vipont Mining Co. v. Uranium Research and Development Co.*, Wyo., 376 P.2d 868 (1962); and *Carter*

*v. Davison*, Wyo., 359 P.2d 990 (1961). The formal judgment should be granted only where it is clear that no issue of material fact is involved, and where inquiry into the facts is not desirable to clarify the application of the law. *Forbes Co., Inc. v. MacNeel*, Wyo., 382 P.2d 56 (1963). Where there are genuine issues of material fact the summary judgment should not be granted. *Gilliland v. Steinhoefel*, Wyo., 521 P.2d 1350 (1974); *Kover v. Hufsmith*, Wyo., 496 P.2d 908 (1972); *McClure v. Watson*, Wyo., 490 P.2d 1059 (1971); *Low v. Sanger*, Wyo., 478 P.2d 60 (1970); *Godard v. Ridgway*, Wyo., 445 P.2d 757 (1968). On the other hand, the whole purpose of the procedural technique of a summary judgment would be defeated if cases could be forced to trial by the mere assertion that a genuine issue of material fact exists. *Maxted v. Pacific Car & Foundry Company*, Wyo., 527 P.2d 832 (1974); *LeGrande v. Misner*, Wyo., 490 P.2d 1252 (1971); *McCamon v. Darnall Realty*, Wyo., 444 P.2d 623 (1968); *In Re Wilson's Estate*, Wyo., 399 P.2d 1008 (1965). It is the duty of the trial judge to ascertain what material facts exist without substantial controversy. *Clouser v. Spaniol Ford, Inc.*, Wyo., 522 P.2d 1360 (1974). The propriety of granting a summary judgment depends then upon the correctness of the court's dual findings that there was no genuine issue as to any material fact and that the prevailing party was entitled to judgment as a matter of law. *Dixon v. Credit Bureau of Douglas*, Wyo., 419 P.2d 707 (1966).

■■ In the cited cases and others, this Court has emphasized the effect of the presence or absence of a genuine factual issue. It is not to be overlooked, however, that such issue must relate to a material fact. *Gladstone Hotel, Inc. v. Smith*, Wyo., 487 P.2d 329 (1971). A material fact has been defined as one having some legal significance, that is, under the law applicable to a given case, it would control

in some way the legal relations of the parties [1]; as one upon which the outcome of litigation depends in whole or in part [2]; as one on which the controversy may be determined [3]; as one which will affect the result or outcome of the case depending upon its resolution [4]; and one which constitutes a part of the plaintiff's cause of action or of the defendant's defense.[5] A fair summary of these definitions is that for purposes of ruling upon a motion for summary judgment a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. Such a fact would necessarily affect the application of the appropriate principle of law to the rights and obligations of the parties. In considering a motion for summary judgment it is appropriate for a court to identify the essential elements of the plaintiff's cause or of the defense asserted, and to then determine the materiality of any fact in the light of whether it will establish or refute one of those essential elements. If it does not have that effect, it would not be a material fact in the controversy, and a genuine issue with respect to that fact, no matter how sharp, would not foreclose the granting of a motion for summary judgment.

The major claim by Johnson is that the district court should not have granted the motion for summary judgment because of the dispute in the record as to whether Soulis agreed to make payments of $700 per month to Johnson, a fact which Johnson assumes to be material. Applying the criteria above, the district court as to this particular claim ruled correctly because given the circumstances of this case this particular fact was not material; there was no genuine issue as to the fact; and

Soulis was entitled to judgment as a matter of law.

■ In Wyoming the elements of an action for fraud have been identified as a false representation by a defendant of material facts which are relied upon by a plaintiff to his damage. *Davis v. Schiess*, Wyo., 417 P.2d 19 (1966). Earlier this Court developed the concept that the asserted false representation must be one which is made to induce action, and that it must be reasonably believed by the plaintiff to be true. *First National Bank v. Swan*, 3 Wyo. 356, 23 P. 743 (1890).

■ Soulis has urged to this Court that none of the matters upon which Johnson relies could be considered fraud as a matter of law. Except for an allegation of a statement of opinion which is not relied upon here, Johnson's allegations of fraud related to promises of future action by Soulis. The general rule is that fraud ordinarily cannot be founded upon a representation which is promissory in nature. *Lawson v. Schuchardt,* Wyo., 363 P.2d 90 (1961); *Call v. Town of Afton,* 73 Wyo. 271, 278 P.2d 270 (1954); *In Re Adoption of Hiatt,* 69 Wyo. 373, 242 P.2d 214 (1952); *Farmers' Lumber Co. v. Luikart,* 36 Wyo. 413, 256 P. 84 (1927); and *First National Bank v. Swan,* supra. This general rule, however, is subject to an exception to the effect that if the representation, although promissory in nature, is made with no intention of performing it or with a present intention not to perform, it may then serve as a foundation for an action in fraud; one of the justifications for the exception being that there does exist a misrepresentation of a present fact, that is, the intention of the promisor. Prosser, *Torts* § 109, p. 729 (4th ed. 1971); 37 Am.Jur.2d,

---

1. *Ahten v. Citizens Homestead Association,* La.App., 163 So.2d 403 (1964).

2. *Morris v. McNicol,* 83 Wash.2d 491, 519 P.2d 7 (1974).

3. *Ebert v. Mussett,* 214 Kan. 62, 519 P.2d 687 (1974).

4. *Lynx, Incorporated v. Ordnance Products, Inc.,* 273 Md. 1, 327 A.2d 502 (1974); *Rathbun v. W. T. Grant Company,* Minn., 219 N.W.2d 641 (1974); *Richards v. Midkiff,* 48 Haw. 32, 396 P.2d 49 (1964).

5. *Johnson v. Lamb,* 273 N.C. 701, 161 S.E. 2d 131 (1968).

*Fraud and Deceit* § 68 (1968); 37 C.J.S. *Fraud* § 12 (1943). See *Alleman v. Alleman*, 78 Wyo. 135, 319 P.2d 871 (1958); *Bushnell v. Elkins*, 34 Wyo. 495, 245 P. 304 (1926); *Metcalf v. Hart*, 3 Wyo. 513, 27 P. 900 (1891).

Conceptually, a promise by Soulis, as it is alleged by Johnson, "that he would provide plaintiff with an income of $700 per month," or "that plaintiff would receive the sum of $700 per month free and clear of any and all other obligations relating to said real property," could serve as a basis for an action of fraud, if Johnson relied upon the statement in making the contract. It is clear from this record, however, and the fact is not disputed, that at the time the "Standard Purchase Offer, Acceptance and Receipt" was executed, Johnson had been apprised of the fact that Soulis was not going to pay him $700 a month free and clear of any other obligations relating to the property. Whatever the situation may have been up to that time so far as the negotiations of the parties were concerned, Johnson, at the time of the contract, knew that Soulis did not intend to pay more than the contract required, and it then became legally impossible for Johnson to rely upon any promise with respect to payment of $700 a month to him as a fact inducing him to make the contract. In dealing with the motion for summary judgment the district court correctly treated any fact concerning a $700 per month payment as not material. It could not establish an essential element of the action for fraud since Johnson could not, as a matter of law, reasonably have relied upon it in making the contract which he seeks to avoid.

Under these circumstances there was no genuine issue of fact as to the payment of $700 per month. This contention, of course, is different from the provision in the written contract. The usual rule is that when the parties have effected an integration of their agreement other evidence is not relevant if its sole purpose is to alter the terms of the integrated agreement, subject however, to an exception that fraud may be established by other evidence for the purpose of demonstrating that the integrated agreement is void and of no effect. *North American Uranium, Inc. v. Johnston,* 77 Wyo. 332, 316 P.2d 325 (1957); *Russell v. Curran,* 66 Wyo. 173, 206 P.2d 1159 (1949); *Holly Sugar Corporation v. Fritzler,* 42 Wyo. 446, 296 P. 206 (1931); *Baylies v. Vanden Boom,* 40 Wyo. 411, 278 P. 551 (1929); *Bushnell v. Elkins,* supra; *Demple v. Carroll,* 21 Wyo. 447, 133 P. 137 (1913), reh. den. 21 Wyo. 458, 135 P. 117 (1913); *Stickney v. Hughes,* 12 Wyo. 397, 75 P. 945 (1904). Pursuing this theory, it might be argued that the testimony on Johnson's deposition relating to the $700 monthly payment would be admissible, but this is true only if it would establish fraud. This evidence, however, could not prove fraud because it does not disclose a material fact upon which Johnson reasonably relied. It then contravenes the rule that evidence relied upon to demonstrate an issue of fact to prevent a summary judgment must be such as would be admissible in evidence; and inadmissible evidence such as, for example, parol evidence to vary the terms of a written instrument cannot be considered. *Maxted v. Pacific Car & Foundry Company,* supra; *McClure v. Watson,* supra; *Low v. Sanger,* supra; *Newton v. Misner,* Wyo., 423 P.2d 648 (1967); *Dixon v. Credit Bureau of Douglas,* supra; *Kelsey v. Anderson,* Wyo., 421 P.2d 163 (1966); *Cook Ford Sales, Inc. v. Benson,* Wyo., 392 P.2d 307 (1964); *Lieuallen v. Northern Utilities Company,* Wyo., 368 P.2d 949 (1962); *Wunnicke Finance Company v. Tupper,* Wyo., 373 P.2d 142 (1962). Application of this well-recognized rule leads to the conclusion that in this instance, with respect to the $700 per month monthly payment, there not only was not a dispute over a material fact, but since Johnson's testimony had to be disregarded, the record does not disclose a genuine dispute of fact.

Turning to the matters of the bargain lease, and the alleged representa-

tion that Johnson did not need a real estate broker or independent attorney in connection with the transaction, the record discloses that these contentions come within the precept set forth in *Twing v. Schott,* 80 Wyo. 100, 338 P.2d 839 (1959), and *Goldberg v. Miller,* 54 Wyo. 485, 93 P.2d 947 (1939), reh. den. 54 Wyo. 499, 96 P.2d 570 (1939), that fraud will not be imputed to a party when the facts and circumstances out of which it is supposed to arise are equally consistent with honesty and purity of intention. This is simply another way of stating the proposition that fraud must be demonstrated in a clear and convincing manner. See *In re Adoption of Hiatt,* supra; *Williams v. Yocum,* 37 Wyo. 432, 263 P. 607 (1928); and *Patterson v. Lee-Clarke-Andreesen Co.,* 7 Wyo. 401, 52 P. 1085 (1898). The undisputed record in this case discloses that Soulis agreed that Johnson could stay in his apartment at a rental of $123 per month but that Johnson would be expected to maintain the lawn and look after the place, and that shortly after the transaction Soulis did terminate that arrangement and raise Johnson's rent to the usual rate because in his judgment Johnson was not looking after the lawn. The undisputed record also shows that when Soulis and Johnson agreed to consummate the sales transaction Soulis invited Johnson to select the attorney to handle the transaction. While the utilization of one attorney might well be consistent with Johnson's complaint that Soulis told him he did not need his own attorney or real estate broker, the fact that he was afforded the opportunity to select the attorney clearly demonstrates the lack of any improper motive on Soulis' part. In these respects the record not only fails to indicate any fraudulent intent on Soulis' part, but demands the application of the foregoing rule because these circumstances are equally consistent with honesty and purity of intention.

In this appeal Johnson did not seriously urge his contentions of undue influence apparently on the assumption that he was en-

titled to have the case remanded for trial on the issues of fraud. Since we have concluded otherwise, we will briefly consider the possibility of triable issues relating to undue influence. A general definition and statement of the effect of undue influence is found in the A.L.I. Restatement, Contracts § 497 (1932), as follows:

"Where one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a manner inconsistent with his welfare, a transaction induced by unfair persuasion of the latter, is induced by undue influence and is voidable."

The record in this case is silent with respect to any facts which would demonstrate the existence of a confidential relationship between Soulis and Johnson within the quoted definition.

■ The tenor of Johnson's assertion would indicate that he relies on the concept that he was under the domination of Soulis (found in his claim that he was persuaded that he did not need a real estate broker or independent attorney) and that because of the number of contacts by Soulis the theory of excessive importunity creates an issue for trial with respect to undue influence. See, e. g., *Halman v. Bullard,* 261 Ala. 115, 73 So.2d 351 (1954); *Beard v. Beard,* 173 Ky. 131, 190 S.W. 703 (1917); *Johnson v. Johnson,* N.D., 85 N.W.2d 211 (1957); *Withers v. Withers,* 363 Pa. 431, 70 A.2d 331 (1950); *Teats v. Anderson,* 358 Pa. 523, 58 A.2d 31 (1946); 26 C.J.S. *Deeds* § 62, p. 762 (1956). What we have said above with respect to the deprivation of the service of an independent broker or attorney demonstrates that no undue influence can be attributed to that circumstance. Domination by Soulis and the free choice extended to Johnson to select the attorney are antithetical. In examining the facts of those cases in which excessive importunity has been discussed or has led to a conclusion of undue influence, we hold that on this record, as a matter of law, the course

of the negotiations between Soulis and Johnson did not constitute excessive importunity. It is enough to demonstrate that Johnson was not under the domination of Soulis to point to the undisputed facts in the record showing that Johnson at the last stage of the negotiations advised Soulis of an offer by the owner of adjacent apartments to pay him $97,500 and a few thousand more for his apartment house. The ploy was successful to the extent that Soulis made his final offer of $100,000. This event refutes the presence of undue influence, and the district court correctly held that Soulis was entitled to judgment as a matter of law on this ground also.

Concluding that there were no genuine issues of material facts with respect to Johnson's contentions of fraud and undue influence, we hold that the district court properly entered summary judgment in favor of Soulis. The judgment of the district court is affirmed.