Robert F. O'DONNELL and Lois
O'Donnell, Appellants
(Defendants),

v.

WESTERN NATIONAL BANK OF
CASPER, Appellee (Plaintiff).

No. 83–141.

Supreme Court of Wyoming.

Sept. 19, 1985.

John C. Brooks, Vlastos, Reeves, Murdock and Brooks, Casper, and Michael O'Donnell, Senior Law Student, for appellants.

H.B. Harden, Jr., Harden & Harden, Casper, for appellee.

Before THOMAS, C.J., ROSE, ROONEY and BROWN, JJ., and RAPER,* J., Retired.

THOMAS, Chief Justice.

In resolving this appeal, we must address questions of the sufficiency of the evidence to sustain a theory of fraud and a theory of undue influence. Both of these theories were asserted as affirmative defenses to an action brought to recover the principal, interest and attorney's fees on two promissory notes. In addition, they were presented as independent grounds for affirmative relief in appropriate counterclaims. Another question we must address is when the statute of limitations on a claim against a bank for conversion of money in a depositor's account starts to run. The district court held that the evidence of fraud and undue influence was not sufficient to justify submission of those issues to a jury. It also held that the statute of limitations on the claim of conversion began to run at the time the depositor was notified of the transfers from the depositor's account, and, therefore, that cause of action was barred. We agree with these rulings and affirm the judgment of the trial court.

* CARDINE, J., having recused himself, RAPER, J., Retired, was assigned pursuant to order of the court entered June 13, 1983.

The appellants, Robert F. O'Donnell and Lois J. O'Donnell, state the issues presented by their appeal in this way:

"A. Did the trial court err, as a matter of law, in ruling that Defendants' claims of fraud, undue influence and conversion were barred by the four year statute of limitation?

"B. Did the trial court err, as a matter of law, in ruling that insufficient evidence existed to submit to the jury that the Plaintiff was guilty of fraud or undue influence?"

The appellee, the Western National Bank of Casper, agrees with that statement of the issues.

The events which led to this litigation began in April of 1977 when the Wyoming National Bank of Casper loaned money to a firm known as Enesco of Wyoming, Inc., which was in the business of manufacturing an energy-saving wall panel, consisting of finished wall board on the inside and exterior, for use in home or office. The loans by the bank were secured by Enesco's equipment, tools, furniture and fixtures, inventory, accounts receivable, retainages and materials. One loan in the amount of $50,000 was renewed in July of 1977. Apparently Enesco's business was not successful, and some of the principals began looking for new capital. In the process they talked to Barton W. Smith, President of the Western National Bank of Casper. He suggested that Mr. O'Donnell might be interested in acquiring this business because it would fit in with his own insulation business.

Subsequently, an agreement was reached pursuant to which the Western National Bank of Casper loaned $61,494.43 to Robert O'Donnell, which was used to pay off the Enesco of Wyoming, Inc., notes to the bank, and Enesco's notes then were assigned to Mr. O'Donnell. The stated purpose of the transaction was that O'Donnell would take over the position of the bank. At apparently about the same time, Mr. O'Donnell also received a bill of sale from Enesco of Wyoming, Inc., which described substantially the same property covered by the security agreement originally given to the bank and subsequently assigned to Mr. O'Donnell.

These events occurred during a period of turmoil in Mr. O'Donnell's life. One of his sons had been seriously injured and burned in a motorcycle crash not long before. A family friend, whom he described as almost like a sister to him, passed away in Denver, and he went there to attend the funeral. During that time, he apparently suffered some minor stroke which temporarily impaired his vision and caused serious concerns about his health. Barton W. Smith testified that because of these events he wondered whether Mr. O'Donnell should attempt to take over the Enesco business at that time, and posed that question to Mr. O'Donnell.

Mr. O'Donnell proceeded as indicated, however, and shortly thereafter one of the individuals who had been interested in Enesco of Wyoming, Inc., suggested that Mr. O'Donnell owed him $24,000 because of a debt from that corporation to him. At the same time he claimed that he was the owner of the secured property. At Smith's suggestion, O'Donnell proceeded with an action to establish his title to the property and equipment, and he was initially represented without charge by the same attorney who represented the bank. When O'Donnell's deposition was taken, however, that attorney learned of the bill of sale to O'Donnell, and he concluded that possibly there was a difference of interest between O'Donnell and the bank. He then suggested that O'Donnell obtain independent counsel, which O'Donnell did, and ultimately a judgment was entered based upon a compromise and settlement which established O'Donnell's title to the equipment covered by the security agreement and financing statement which had been assigned to him by the bank.

Subsequently, O'Donnell concluded that the bank had not dealt in good faith with him, and he advised the bank, of which he had been a long-time customer, that he would make no further payments on the bank's notes arising out of this transaction.

When he failed to make the payments, the bank instituted suit to recover the principal amount of the notes, the interest and attorney's fees. O'Donnell defended that action and asserted as affirmative defenses fraud in the inducement with respect to the transaction and undue influence on the part of Barton W. Smith. He also asserted counterclaims for fraud, for undue influence, and for conversion. This last claim arose out of an additional loan of $25,000 which was made to him by the Western National Bank of Casper for his own account. Of that amount, however, $2,567.03 was deposited to one Enesco account, and $1,025.48 was deposited to another Enesco account. Apparently these amounts were intended to be used to pay off pre-existing debts of Enesco. The "advice of charge" notices for those two amounts were included in O'Donnell's bank statement for the month of August, 1977. Western National Bank of Casper answered denying the counterclaims, and the case ultimately went to trial before a jury.

At the close of all the evidence, the court granted the bank's motion for judgment on its complaint and judgment against the defendants on their counterclaim. The court held that there had been shown no defense to the amounts due on the promissory notes, finding that the evidence was insufficient to sustain either the theory of fraud or undue influence. The district court further held that the affirmative claims of fraud, undue influence and conversion all were barred by an applicable four-year statute of limitations. The O'Donnells have taken their appeal from the judgment which was entered based upon the findings of the court at the close of all the evidence.

We address the issues presented inversely because the parties are in accord that the statute of limitations would not foreclose defenses interposed by a party to a claim. They agree that the correct rule is found in *Hawkeye-Security Insurance Company v. Apodaca*, Wyo., 524 P.2d 874 (1974). Because of the rule of that case, the decision of the district court not to submit the defenses of fraud and undue influence to the jury depends upon the in-sufficiency of the evidence to support those theories.

The Wyoming National Bank of Casper points to precedent in Wyoming requiring in order to establish fraud a false representation of a material fact which is relied upon to the detriment of the person claiming fraud. Furthermore, the person claiming fraud must establish these elements in a clear and convincing manner. *Hagar v. Mobley*, Wyo., 638 P.2d 127 (1981); *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975); *White v. Ogburn*, Wyo., 528 P.2d 1167 (1974); *Davis v. Schiess*, Wyo., 417 P.2d 19 (1966).

■ In this regard, the O'Donnells point to knowledge on the part of Barton Smith that Tech Plus, a partnership composed of principals in Esesco of Wyoming, Inc., claimed ownership of the equipment of Esesco of Wyoming, Inc. They also assert that Smith told Mr. O'Donnell that he would receive the assets of Enesco of Wyoming, Inc., by taking the position of the bank and that Smith failed to tell Mr. O'Donnell of the possibility of a lawsuit over a debt to Tech Plus. The evidence was equivocal with respect to any knowledge on the part of Barton W. Smith about the claim by Tech Plus of ownership of the equipment. The debt to Tech Plus was shown on a financial statement which was in Mr. O'Donnell's hands before he accepted the assignment from the bank and accepted a bill of sale from Enesco of Wyoming, Inc. He did establish his ownership of the assets in litigation with Enesco of Wyoming, Inc. and the principals of Tech Plus. Under the circumstances, we agree with the district court that the evidence of any false representation which was relied upon by O'Donnell to his detriment is far from clear and convincing, and the district court properly refused to submit the issue of fraud to the jury.

■ With respect to the claim of undue influence, the O'Donnells' position suffers from similar failings. In *Johnson v. Soulis*, supra, 542 P.2d at 874, we adopted the following definition of undue influence

from A.L.R. Restatement, Contracts § 497 (1932):

> "Where one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a manner inconsistent with his welfare, a transaction induced by unfair persuasion of the latter, is induced by undue influence and is voidable."

In this regard, the O'Donnells claim unusual susceptibility of Mr. O'Donnell to persuasion at the time of the transaction because of the tragic events that had occurred within the time preceding the transaction. They also point to opportunity on the part of Barton W. Smith to exercise undue influence and suggest that the evidence shows a disposition to exercise undue influence. Finally, they claim that there was an unnatural nature in this transaction. In this jurisdiction, concepts of undue influence have most frequently been articulated in cases involving will contests. In those cases we have held that undue influence must be such as destroys free agency and substitutes the will of another for that of the testator. We have required a dominant confidential relationship and clear proof that undue influence in fact was exercised. *Matter of Estate of Brosius*, Wyo., 683 P.2d 663 (1984); *In re Estate of Carey*, Wyo., 504 P.2d 793 (1972); *In re Estate of Wilson*, Wyo., 399 P.2d 1008 (1965); *In re Estate of Draper*, Wyo., 374 P.2d 425 (1962); *In re Estate of Nelson*, 72 Wyo. 444, 266 P.2d 238 (1954); *In re Estate of Anderson*, 71 Wyo. 238, 255 P.2d 983 (1953). Other cases involving rescission of deeds and contracts reflect similar principles. See *Anderson v. Rocky Mountain Federal Savings and Loan Association*, Wyo., 651 P.2d 269 (1982); *Perry v. Vaught*, Wyo., 624 P.2d 776 (1981); *Skinner v. Skinner*, Wyo., 601 P.2d 543 (1979); *Brug v. Case*, Wyo., 600 P.2d 710 (1979); *Johnson v. Soulis*, supra; *Zullig v. Zullig*, Wyo., 502 P.2d 198 (1972); *McIver v. Faulk*, Wyo., 397 P.2d 270 (1964). An evaluation of the evidence relied upon by the O'Donnells demonstrates that it would not meet any of these tests. The claim that Smith's advice to O'Donnell that it would be an awfully good deal for him to take the position of the bank and receive the assets of Enesco in connection with O'Donnell's susceptibility to this advice because of his problems and his testimony that he depended upon the financial advice of Smith do not overcome O'Donnell's own testimony that he investigated the transaction and made an independent judgment with respect to whether or not he should go ahead. Again we agree with the district court that there was insufficient evidence of undue influence to go to the jury.

While we are in accord with the conclusion of the district court that the claims of undue influence and fraud insofar as affirmative relief was sought were barred by the applicable statute of limitations, § 1–3–105, W.S.1977, we need not deal specifically with that issue in view of our disposition of the evidentiary issue. We do agree, however, that when the bank statements were sent to Mr. O'Donnell in 1977, he knew or should have known of the claimed conversion of moneys from his account by the bank which deposited them in the accounts of Enesco of Wyoming, Inc. Since no claim was brought within four years based upon that alleged conversion, the district court properly concluded that the claim was barred by the four-year statute of limitations set forth in § 1–3–105, W.S.1977. This justified the conclusion of the district court not to submit the claim of conversion to the jury.

The judgment of the district court is affirmed.